COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| HUDSPETH COUNTY | | No. 08-09-00156-CV |
| UNDERGROUND WATER | § | |
| CONSERVATION DISTRICT NO. 1, | § | Appeal from |
| | § | |
| Appellant, | | 205th District Court |
| | § | |
| v. | | of Hudspeth County, Texas |
| | § | |
| GUITAR HOLDING COMPANY, L.P., | | (TC # 3703-205) |
| | § | |
| Appellee. | | |

## **O P I N I O N**

This is an appeal from the trial court's determination on attorney's fees, expert witness fees, and administrative costs. The case originated when Guitar Holdings Company, L.P. challenged decisions of the Hudspeth County Underground Water Conservation District No. 1 on certain groundwater rules and permits. After several administrative proceedings, Guitar appealed to the district court and subsequently to this court. *Guitar Holding Co., L.P. v. Hudspeth County Underground Water Conservation Dist. No. 1*, 209 S.W.3d 146, 152 (Tex.App.--El Paso 2006), *aff'd in part*, *rev'd in part*, 263 S.W.3d 910 (Tex. 2008). We affirmed in part, upholding the District's determination as to the validity of the permits and rules, and reversed and remanded in part, ruling in favor of the District on their cross-appeal for attorney's fees. *Guitar Holding*, 209 S.W.3d at 152. Guitar brought a limited appeal to the Texas Supreme Court arguing only the validity of the transfer permit rules. The Texas Supreme Court reversed only as to the transfer issues and remanded the case to the trial court. *Guitar Holding Co., L.P. v. Hudspeth County Underground Water*

*Conservation Dist. No. 1*, 263 S.W.3d 910, 918 (Tex. 2008).[1]  On remand, the only remaining dispute was the award of the fees sought by the District under Section 36.066(g) of the Texas Water Code.  The trial court found that the District did not prevail and declined to award fees.  The District now appeals that determination.

## FACTUAL BACKGROUND

This suit originated based on the right of landowners to sell and transfer the groundwater below the surface of their land.  The District is located in northeast Hudspeth County, less than one hundred miles east of El Paso.  *Guitar*, 263 S.W.3d at 913.  The District was created in the mid-1950's in response to a drought as well as the development of "an intense irrigated agricultural industry" in the area. *Id.*;  *Guitar Holding*, 209 S.W.3d at 152.  The District was specifically created to regulate the Bone Springs-Victorio Peak Aquifer which produces groundwater for the region.  *Guitar Holding*, 209 S.W.3d at 152.

In response to varying water usage, the District enacted rules ("the 1990 Rules" or "Old Rules") which developed a permitting scheme for landowners in the area.  *Id*.  However, by 2000 the State Auditor's Office deemed the District non-operational for failing to meet its plan objectives.  *Id*.; *Guitar*, 263 S.W.3d at 913.  The District later sought to return to operational status.  While working to bring its management plan into compliance, the Texas Legislature enacted Senate Bill 2 which in part amended Chapter 36 to prohibit groundwater districts from imposing more restrictive conditions on persons seeking permits to transport water out of a district than on existing in-district users, except in limited circumstances.  Acts of 2001, 77th Leg., R.S., ch. 966, §§ 2.49, 2.52, 2001 TEX.GEN.LAWS 1991, 2015, 2018 (codified as amended at TEX.WATER CODE ANN. §§ 36.113(e),

---

[1]  Throughout this opinion, the first-round court of appeals decision is cited as "*Guitar Holding*" and the Texas Supreme Court's decision is cited as "*Guitar*."

36.122(c).

Subsequently, the District adopted a new management plan which aimed to sustain the Aquifer at "an historically optimal level by regulating the withdrawal of groundwater." *Guitar*, 263 S.W.3d at 913. The Texas Water Board certified the new management plan which became effective on May 31, 2002. *Guitar Holding*, 209 S.W.3d at 152. The adoption of these new rules repealed the District's old rules. *Id*.

Under the new rules, groundwater production was divided among three classes of users which included "existing and historic users" and "new users."[2] *Guitar*, 263 S.W.3d at 914. The right to production was directly linked to the Aquifer's water level, although the groundwater limitations imposed on the user varied based on the type of permit held by the well owner. *Id*. The new rules recognized three types of permits: (1) validation permits; (2) operating permits; and (3) transfer permits. *Id*. Validation permits were generally provided to wells operating before the adoption of the District's new rules. *Id*. Operating permits were available to landowners who either applied for a validation permit but were denied, or who were ineligible to obtain a validation permit. To obtain a transfer permit, a well operator must first have either a validation or operating permit. A transfer permit must be obtained before a well owner may transfer water out of the District.

Guitar--a ranch rather than a farm--is one of the largest landowners in the area, covering more than 38,000 acres. Under the new rules, since Guitar did not irrigate its land during the relevant period, the group of farmers in the area were permitted to produce a significantly greater amount of water than Guitar, even though Guitar owns more land. *Guitar*, 263 S.W.3d at 913-14.

Guitar brought four separate unsuccessful administrative appeals to the Hudspeth County District Court challenging the facial validity of the District's new rules regarding production and

---

[2] "New Users" might also include historic users seeking to increase consumption. *Guitar*, 263 S.W.3d at 914.

transfer permits and raising as-applied challenges to the validity of permits issued to the group of irrigators. *Guitar Holding*, 209 S.W.3d at 152. We upheld the district court's rulings and Guitar appealed to the Texas Supreme Court. *Guitar*, 263 S.W.3d at 910.

## PROCEDURAL BACKGROUND

### *Guitar I-IV*

This case originated in 2002 when Guitar sued the District to invalidate certain rules enacted by the District. In four separate administrative appeals to the Hudspeth County District Court, Guitar challenged the facial validity of the District's new rules regarding production and transfer permits and raised as-applied challenges to the validity of permits issued to a group of farmers. After consolidating the administrative appeals, the district court upheld the validity of new rules as well as the permits issued pursuant to those rules which granted other landowners greater production rights than Guitar. Before the district court entered its final judgment, the parties stipulated to the amount of attorney's fees and costs incurred by the District at each level of litigation through and including the Texas Supreme Court. The trial court's judgment stated that the stipulation was reasonable, however, it awarded Guitar a refund of certain administrative fees Guitar previously paid to the District and denied the District any attorney fees. Guitar appealed the district court's determination as to the validity of the new rules, and the District filed a cross-appeal claiming entitlement to attorney's fees and costs under Section 36.066(g) of the Texas Water Code. *Guitar Holding*, 209 S.W.3d at 152.

### *Court of Appeals Decision*

We affirmed the trial court judgment in part, and reversed and remanded in part. *Guitar*

*Holding*, 209 S.W.3d at 172. We upheld the District's rulings as to the validity of the new rules.[3]

*Id.* at 160. On cross-appeal the District asserted three issues: (1) the trial court erred in failing to award the District attorney's fees, expert fees, and costs under Section 36.066(g) of the Texas Water Code; (2) the trial court's order that the District refund almost $10,000 in administrative fees to Guitar was contrary to the substantial evidence in the administrative record; and (3) the court erred in assessing 25 percent of the court costs against the District. *Id.* at 167, 169, 171. We held that Section 36.066(g) clearly applied to Guitar's suit and was mandatory. *Id.* at 168. Accordingly, we decided that the District was entitled to attorney's fees and costs because it prevailed on certain claims regarding the District's permit application decisions and fee assessments. *Id.* at 169. Additionally, we determined that the trial court erred in ordering the refund to Guitar. *Id.* at 171. Finally, we concluded that because the District failed to timely object to issue three, it had waived that objection on appeal. *Id.* We then remanded the case to the trial court "for further proceedings consistent with this opinion." *Id.*

### Texas Supreme Court Decision

On petition for review to the Texas Supreme Court, Guitar narrowed its challenge to the validity of the District's transfer rules and the permits issued pursuant to those transfer rules. *Guitar*, 263 S.W.3d at 910. The court found that the District's rules were not in compliance with the court's interpretation of the Texas Water Code and held that the groundwater rules exceeded the District's statutory authorization and were thus invalid. *Id.* at 918. ("Accordingly, we reverse the court of

---

[3] Specifically, we affirmed: (1) the trial court's judgment in *Guitar I* upholding the validity of the District's rules, reversed the trial court's denial of attorney's fees and other litigation expenses, and remanded for further proceedings on this issue; (2) the judgments in *Guitar II* and *IV* upholding the permits the District issued to Cimarron, CLM, RBB, and Triple B; (3) the judgment in *Guitar III* upholding the District's actions on Guitar's permit applications, but reversed the trial court's judgment refunding administrative deposits to Guitar; and (4) the trial court's taxation of part of the costs to all of the parties in *Guitar I, II,* and *III*.

appeals' judgment and render judgment declaring the rules relating to transfer permits in Hudspeth

County Groundwater Conservation District No. 1 invalid, as are the transfer permits issued pursuant

thereto.").

On rehearing, the Supreme Court acknowledged that Guitar abandoned some issues after the

court of appeals' decision and narrowed its appeal to focus on the transfer rules. *Guitar*, 263 S.W.3d

at 918. It further clarified its decision as follows:

> We, of course, agree that issues not presented in the petition for review and brief on
> the merits are waived. We also agree that Guitar Holding abandoned some issues in
> its appeal to this Court and that the court of appeals' judgment remains in effect as
> to these abandoned issues. Accordingly, we grant the District's motion for rehearing
> to clarify that the court of appeals' judgment is reversed only as to that part
> upholding the validity of the District's transfer rules and related permits. The case
> is remanded to the trial court for further proceedings consistent with our opinion.

*Id*. (internal citations omitted).

### *District Court on Remand*

On remand, both parties moved for entry of final judgment.[4] The parties agreed that the final

judgment should: (1) affirm the District's adoption of the validation permit rules and uphold the

validity of the permits issued pursuant to the validation rules; and (2) reverse the District's adoption

of the transfer rules and find the permits which were issued pursuant to the transfer rules to be

invalid. Accordingly, the only remaining issue on remand was the District's entitlement to fees and

costs.

As part of its motion, the District included an affidavit from Renea Hicks. Guitar did not

challenge the affidavit, and the district court admitted it into evidence at the hearing. The affidavit

included a breakdown of attorney's fees allocating costs according to the issues raised during the

---

[4] Guitar's motion asked the court to enter final judgment according to the mandate of the Texas Supreme Court and to determine the amount, if any, of attorney's fees and costs to be awarded to the District given the disposition of the case in favor of Guitar.

appeal and provided amounts for the District's post-remand fees.

The trial court adjudicated the remaining disputed issues on fees and costs in paragraph five of the judgment, which states:

> 5. The Court finds that the Hudspeth District incurred reasonable and necessary attorney fees totaling $73,538.00 in the district court before remand and in the court of appeals before remand. The Hudspeth District shall not recover from Guitar Holding any attorney fees, expert witness fees, or administrative costs for administrative record copies, *as the Court finds that Hudspeth District did not prevail* . [Emphasis added].

Upon request from the District, the trial court also issued findings of fact and conclusions of law. It found that out of the reasonable and necessary fees the District incurred, $68,387 was attributable to reasonable and necessary attorney's fees and $6,901.64 was attributable to expert fees and administrative costs. Additionally, the court found that the issues were so intertwined that attorney's fees and costs could not possibly be segregated at the trial level. It concluded that the District was not the prevailing party under Section 36.066(g).

### *Issues on Appeal*

In three issues, the District challenges paragraph five of the final judgment on remand. By its two main issues, the District argues: (1) the trial court erred in determining on remand that the District was not the "prevailing party" because Guitar waived any right to challenge our determination by failing to include the prevailing party issue on appeal to the Texas Supreme Court; and (2) the trial court erred in disregarding the parties' previous stipulation in determining reasonable and necessary attorney's fees. In its third and final issue, the District argues that if it prevails on this appeal, it is entitled to a judgment on appeal of post-remand fees under Section 36.066(g).

### GUITAR'S WAIVER OF "PREVAILING PARTY" STATUS

In Issue One, the District complains that Guitar waived any challenge to the District's status

as the "prevailing party" by failing to challenge the issue in its appeal to the Texas Supreme Court. We agree.[5]

In the first-round appeals decision, we ruled in favor of the District on its cross-appeal from the trial court's denial of fees. In doing so, we held that Section 36.066(g) is applicable to this suit and is mandatory. *Guitar Holding*, 209 S.W.3d 168. We also held that the District was the prevailing party for purposes of Section 36.066(g). *Id*. On appeal to the Supreme Court, *Guitar* did not raise the issue of the District's "prevailing party" status. As the Supreme Court recognized in its ruling on rehearing, the failure to properly present and argue an issue on appeal waives the issue. *Guitar*, 263 S.W.3d at 918.

Guitar argues that the issue of who was the "prevailing party" was subsumed within the main issue because the District's entitlement to attorney's fees was contingent upon the District prevailing on the main issue in the suit. Therefore, Guitar argues that there was nothing more to appeal than that main issue, which it did. Guitar further claims that, "[w]hen the Supreme Court reversed this Court's judgment and remanded the case to the trial court for further proceedings consistent with its judgment, it necessarily required the trial court to reconsider the issue of whether the District had prevailed."

Guitar's arguments conflict with our reading of the Supreme Court's opinion on rehearing which clearly states that Guitar abandoned all issues except those related to the validity of the transfer permits.[6] *Guitar*, 263 S.W.3d at 918. Guitar relies in part on *Edwards Aquifer Authority*

---

[5] The District first contends that we must review its prevailing party status *de novo*. Because we find that the issue was waived, we need not address the District's prevailing party status at all. Rather, such status was determined as a matter of law during the first-round appeal.

[6] In its entirety, the Supreme Court's opinion on rehearing stated:

On rehearing, the District points out that the court of appeals decided several issues that were not included in the appeal to this Court. In addition to the transfer rules at issue here, Guitar Holding

*v. Day*, 274 S.W.3d 742 (Tex.App.--San Antonio, 2008, pet. granted) in support of the argument that it was under no obligation to raise the attorney fees issue in the Supreme Court. In *Day*, the court stated:

> The Authority requests we remand this matter to the trial court with direction to address the Authority's request for attorney's fees. Applicants argue the Authority did not brief the attorney's fee issue and argue the issue is waived. We disagree. No specific point of error or issue was required because attorney's fees were contingent on the Authority's prevailing in the suit. Having briefed the main issue, *nothing more was required than to ask for remand for attorney's fees in the event our resolution favored the Authority*. [Emphasis added].

*Day*, 274 S.W.3d at 755 (internal citations omitted).

Here, Guitar made no mention of the attorney's fee award or our determination as to the District's prevailing party status in its petition for review to the Supreme Court. Therefore, Guitar waived the issue and the trial court did not have the authority to revoke the District's prevailing party status on remand. Issue One is sustained.

## ATTORNEY'S FEES

The District argues the trial court erred in failing to award attorney's fees and costs as it was

---

complained in the court of appeals about the District's permitting scheme and its application to Guitar Holding's particular circumstances. Also in the court of appeals, the District obtained a remand for the determination of certain fees and costs denied it in the trial court. *See* TEX.WATER CODE ANN. § 36.066(g)(granting district, as prevailing party, its 'attorney's fees, costs for expert witnesses, and other costs').

After the court of appeals' decision in the District's favor, Guitar Holding narrowed its appeal to focus on the transfer rules. The District submits that Guitar Holding thereby abandoned these other issues but fears that our opinion and judgment may be misunderstood on this point. The District accordingly requests that we clarify that the court of appeals' judgment has been reversed only in part.

We, of course, agree that issues not presented in the petition for review and brief on the merits are waived. TEX.R.APP.P. 53.2(f); TEX.R.APP.P. 55.2(f); *Ramos v. Richardson*, 228 S.W.3d 671, 673 (Tex. 2007)(per curiam). We also agree that Guitar Holding abandoned some issues in its appeal to this Court and that the court of appeals' judgment remains in effect as to these abandoned issues. Accordingly, we grant the District's motion for rehearing to clarify that the court of appeals' judgment is reversed only as to that part upholding the validity of the District's transfer rules and related permits. The case is remanded to the trial court for further proceedings consistent with our opinion.

*Guitar Holding*, 263 S.W.3d at 918.

the prevailing party under Section 36.066(g) of the Texas Water Code. Generally, we review a trial court's decision to grant or deny attorney's fees for an abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex.App.--Austin 2005, pet. denied). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). When reviewing a trial court's decision under this standard, we must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex.App.--Houston [14th Dist.] 2003, no pet.); *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 279 (Tex.App.--Houston [1st Dist.] 1996, no writ).

> The statute authorizing attorney's fees is Section 36.066(g) of the Texas Water Code:
>
> If the district prevails in any suit other than a suit in which it voluntarily intervenes, the district may seek and the court shall grant, in the same action, recovery for attorney's fees, costs for expert witnesses, and other costs incurred by the district before the court. The amount of the attorney's fees shall be fixed by the court.

TEX.WATER CODE ANN. § 36.066(g)(West 2008).

In the first-round appeal, we held that Section 36.066(g) applied to this suit, is mandatory, and that the District was the prevailing party under the statute. *Guitar Holding*, 209 S.W.3d at 152. On remand, the trial court determined that the District had incurred reasonable and necessary attorney's fees in the amount of $75,288.64.[7] But it did not award the District any fees because it found the District was not the prevailing party. As stated above, Guitar waived any challenge to the

---

[7] Although the final judgment on remand states the amount of reasonable and necessary fees as $73,538, the trial court's findings of fact and conclusions of law on remand states the total amount of fees as $75,288.64 ($68,387 in attorney's fees and $6,901.64 in other costs). When the amount stated in a final judgment conflicts with the amount stated in the findings of fact and conclusions of law filed after the judgment, the amount stated in the latter is controlling. *See City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex.App.--San Antonio 1998, writ denied); *Arena v. Arena*, 822 S.W.2d 645, 652 (Tex.App.--Fort Worth 1991, no writ); *Law v. Law*, 517 S.W.2d 379, 383 (Tex.Civ.App.--Austin 1974, writ dism'd)(cases holding that findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them and the judgment).

District's prevailing party status. Therefore, the trial court on remand only had discretion to fix the amount of attorney's fees, it did not have the discretion to deny them entirely. *See Mercier v. Southwestern Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775 (Tex.App.--Corpus Christi 2007, no pet.)(under a mandatory fee shifting statute, the trial court does not have discretion to entirely deny attorney's fees as long as they are otherwise proper under the statute).

The question us, then, is whether the parties' stipulations (entered into prior to entry of the original trial court judgment) bound the trial court on remand, or alternatively, whether the District should be awarded the $75,288.64 which the trial court determined on remand as the amount of reasonable and necessary fees.

### The July 20, 2004 and February 18, 2006 Stipulations

In Issue Two, the District argues that the trial court "legally erred in allowing Guitar Holding to abandon its stipulations on remand." Before entry of the final judgments on *Guitar I -III* and *Guitar IV*, the parties entered into two separate stipulations regarding the District's attorney's fees, expert fees, and administrative costs. The stipulated amounts totaled $92,597.20. Although the district court did not award any fees to the District, each of the final judgments reflected the court's determination that the stipulated amounts were reasonable.[8]

A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998); *Ortega-Carter v. American Int'l Adjustment, Co.*, 834 S.W.2d 439, 441-42 (Tex.App.--Dallas 1992, writ denied). Guitar argues that the court was not bound by the

---

[8] The final judgment signed October 15, 2004 states: "The fees agreed upon in the Stipulation filed on July 20, 2004, are found to be reasonable. The Court, however, does not award attorney or expert fees to any of the parties." Likewise the final judgment signed March 11, 2005 states, "The attorney fees agreed upon in the Stipulation filed on February 18, 2005, are found to be reasonable; however, the Court does not award any fees to any of the parties."

stipulations because they said nothing with respect to whether the District's fees were reasonable, and in fact the stipulations stated specifically that they were made, "without any agreement as to their legal relevance or as to whether there is a valid legal basis to their recovery." Guitar cites several cases establishing the general rule that a trial court is not bound by a parties' stipulation. It ignores the trial court's statement in its original judgments that the stipulated amounts were in fact reasonable. Or, as the District points out: "The problem for Guitar is that the principle guiding the case rulings has no applicability if, as an initial matter, the reasonableness determination already has been made and left unchallenged on appeal." However, the circumstances surrounding this case are somewhat unique, and we must review the situation in light of the specific facts. Here, any decision by the trial court must be looked at in light of both this court's first-round appellate decision and the Supreme Court's decision.

In the original judgments, the trial court stated simply that the amounts in the stipulations were reasonable, but that no fees were to be awarded to the District. The trial court did not mention Texas Water Code, Section 36.066, the "prevailing party" status of the District, any factors considered by the court in determining the stipulations were reasonable, any mention as to the necessity of fees, or attempt to fix any specific amount of fees based on the relative success of the parties. On appeal, we determined that the trial court must award the District fees based on their status as the prevailing party, but we remanded the cause to allow the trial court to fix the amount of fees in accordance with Section 36.066. *Guitar Holding*, 209 S.W.3d at 171. Similarly, the Supreme Court remanded the case to the trial court for entry of judgment in accordance with its opinion. *Guitar*, 263 S.W.3d at 918. Accordingly, we conclude that the trial court had the authority to abandon the parties' 2004 stipulation in light of the appellate decisions.

We further conclude that the District is entitled to the amount of fees the trial court found

reasonable and necessary on remand.  The determination of reasonable and necessary attorney's fees is a question for the trial court as the trier of fact and the appellate court may not substitute its own judgment for that of the trial court as finder of fact.  *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880,  882 (Tex. 1990); *Gonzalez v. Nielson*, 770 S.W.2d 99, 102 (Tex.App.--Corpus Christi 1989, writ denied).  Factors to be considered in determining the amount of reasonable attorney's fees include:  (1) the time and labor required, novelty and difficulty of the question presented, and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  *See Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)*; Mercier*, 214 S.W.3d at 775-76.  The court is not required to receive evidence on each of these factors.  *Burnside Air Conditioning and Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897-98 (Tex.App.--Dallas 2003, no pet).  In deciding the amount of fees to award, the court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties.  *Id.*

In its findings of fact and conclusions of law on remand, the trial judge stated that in determining the amount of reasonable and necessary attorney's fees the court he, "considered affidavit of the District's Attorney and that Guitar had stipulated."  The court also considered the "experience, reputation and the ability of the lawyers performing the services and [sic] the novelty

and difficulty of the questions involved.

The District argues that the trial court erred in determining that the reasonable amount of attorney's fees was less than $99,761.08 because the District provided uncontroverted testimony supporting this amount. It is well settled that attorney's fees are conclusively proved when the supporting evidence is clear, direct, positive, and without contradiction from another witness or attendant circumstances, and such evidence could have easily been controverted. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547-48 (Tex. 2009)*, quoting Ragsdale*, 801 S.W.2d at 882. However, considering all the evidence, we conclude there were attendant circumstances weighing against a determination that $99,761.08 was reasonable and necessary.

In light of the relative success of the parties, the trial court had discretion to find that the amounts incurred by the District's attorney were unnecessary or excessive. Accordingly, we reverse paragraph five of the trial court's judgment to the extent it finds that the District is not the prevailing party and awards no fees, and we render judgment that the District be awarded $75,288.64. Issue two is sustained.

### Post-Remand Attorney's Fees

In its third and final issue, the District claims that it is entitled to an award for "an undisputed amount of post-remand attorney fees."

As stated above, the determination of reasonable attorney's fees is a question for the trier of fact and the appellate court may not substitute its own judgment for that of the trial court as finder of fact. *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006); *Ragsdale*, 801 S.W.2d at 882. Even where an award of attorney's fees is mandated by statute, the trial court still has discretion to determine the amount. *See Mercier*, 214 S.W.3d at 775; *accord* Tex. Water Code Ann. § 36.066 (g)("The amount of the attorney's fees shall be fixed by the court.").

The District relies on *Ragsdale* and asks us to render judgment awarding post-remand attorney's fees as a matter of law. In *Ragsdale*, the Texas Supreme Court held that:

> In awarding attorney's fees the trial court, as the trier of fact, must take into account various factors such as: the nature and complexity of the case; the nature of the services provided by counsel; the time required for trial; the amount of money involved; the client's interest that is at stake; the responsibility imposed upon counsel; and the skill and expertise required.

*Ragsdale*, 801 S.W.2d at 881. The court noted that generally, testimony as to fees by an interested witness "does no more than raise a fact issue to be determined by the jury." *Id*. at 882. But the Court also recognized an exception to the general rule which arises where:

> [T]he testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.

*Id*. at 882. The court observed that this exception especially applies, "when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Id*. Applying the exception in *Ragsdale*, the Supreme Court ruled that the court erred by not taking as true, "as a matter of law," the testimony of the interested witness, an attorney who testified without objection that $22,500 was a reasonable amount for attorneys' fees. *Id*. at 881-82. However, *Ragsdale* also recognized that the rule would not apply to any situation in which attorney's fees testimony is undisputed stating:

> [W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact.

*Ragsdale*, 801 S.W.2d at 882.

On remand, the District submitted the affidavit of its attorney, Renea Hicks, which stated the

post-remand fees as: $2,000 for district court work and $6,500 for appeals court work. The trial court's made no reasonableness determination on attorney's fees specific to post-remand fees, but the District argues that because the only evidence presented was the Hicks affidavit, we may render judgment for post-remand fees in the amount of $8,500.

While the Hicks affidavit is some evidence of a reasonable fee, it is not conclusive. In light of the circumstances, we conclude that the District's evidence did not rise to a level that would permit this court to render judgment of attorney's fees as a matter of law under *Ragsdale. See Mercier*, 214 S.W.3d at 777. Accordingly, we remand the case to the trial court for a determination of the amount of reasonable and necessary post-remand attorney's fees.

August 26, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.