COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| ROBERT H. HOLMES, | | No. 08-12-00209-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 101st District Court |
| | § | |
| GMAC, INC., | | of Dallas County, Texas |
| | § | |
| Appellee. | | (TC # 10-1442-E) |
| | § | |

**O P I N I O N**

Robert H. Holmes appeals from a judgment entered in favor of GMAC, Inc.[1]  We affirm.

**FACTUAL SUMMARY**

On September 29, 2006, Holmes purchased a 2007 GMC Denali from Sewell Buick Pontiac GMC in Dallas and he executed a retail installment contract ("Contract") for the amount of $60,492.68.  GMAC subsequently purchased the Contract from Sewell Buick Pontiac GMC.

The contract required Holmes to make thirty-eight payments of $1,062.00 with the first payment due on November 14, 2006, and a thirty-ninth payment of $33,126.00 on January 14, 2010, or alternatively, the vehicle could be sold to GMAC on the due date of the final payment at a defined "Sale Price" provided Holmes met a number of conditions.  Holmes made thirty-two

---

[1]  The Fifth Court of Appeals transferred this case to this Court pursuant to a docket equalization order entered by the Texas Supreme Court.  We will decide the case in accordance with the precedent of the Fifth Court of Appeals. *See* TEX.R.APP.P. 41.3.

payments in the amount of $1,062.00 on his account with GMAC, and two reduced payments pursuant to extension requests. Holmes tendered two other payments which did not go through due to insufficient funds. As a result of the extensions agreed to by GMAC, the last scheduled payment on the Contract became due on April 14, 2010. Holmes defaulted on the Contract by failing to make several payments when due. Holmes claimed that he made three payments which GMAC failed to credit to his account, but the evidence at trial showed that these three payments were made on another GMAC account for a 2003 Corvette. Holmes paid a total of $35,046.00 on the account which is less than the amount of $40,356.00 required by the Contract, excluding the final scheduled payment of $33,126.00. GMAC accelerated the balance due under the Contract and filed its breach of contract suit against Holmes on February 5, 2010. Holmes surrendered the vehicle to Sewell Buick Pontiac GMC on April 17, 2010. GMAC subsequently sold the vehicle for $28,500.00 which left a balance of $15,637.81.

The trial court set the case for a bench trial on April 4, 2011, but the parties agreed to a continuance, and the case was re-set for trial on September 26, 2011. Holmes filed a second motion for continuance on September 16, 2011 and the trial court granted the motion. Trial was re-set for January 3, 2012. GMAC appeared and announced ready for trial on January 3, 2012, but Holmes's attorney notified the court that Holmes was going to an emergency room due to chest pain. The trial court advised Holmes' attorney that if Holmes was not available to attend trial by the end of the week, the court would require him to provide an affidavit from his doctor. The court re-set the case for trial on January 23, 2012 and Holmes responded by filing a third motion for continuance requesting that the court continue the case for an unspecified period of time until he was released by his doctor. Holmes attached letters from two doctors, Matthew Lo, M.D. and Robert Rosen, M.D., stating that he was seen at St. Paul Hospital University ER on

January 3, 2012 and was admitted for observation that day. Dr. Lo's letter stated he had advised Holmes to refrain from any strenuous or stressful activities including trial work until he has been evaluated by his cardiologist.

GMAC appeared and announced ready for trial on January 23, 2012. Holmes' attorney appeared and announced that Holmes was not ready to proceed. GMAC objected to continuing the case again. The trial judge expressed his reluctance to continue the case again and asked Holmes' attorney to explain the substance of Holmes' anticipated testimony. Counsel stated that Holmes would testify about the past course of dealing on the "SmartLease with GMAC" and payments that GMAC had received from Holmes but had not applied to the account. After hearing argument from the parties, the trial court ruled that GMAC would be permitted to present its case-in-chief and Holmes could cross-examine the witnesses. The trial judge added that if he felt it was necessary or helpful for him to hear Holmes' testimony, they would adjourn the trial until a date when he would be available but not indefinitely. After GMAC presented its evidence and rested, the court engaged in the following discussion with Holmes' attorney:

> [The Court]: Mr. Shoultz, understanding that you do not have your client available, I think the business records that have been admitted establish what's gone on here pretty clearly. Particularly with respect to the two payments in 2006, I think the record has established that they were properly credited to a different account. And, at best, there's -- I might have a suspicion about that $969, but I think the record keeping is sufficiently consistent that I'm not persuaded by that. What would Mr. Holmes testify to that you think would constitute a defense?
>
> [Mr. Shoultz]: Well, Judge, other than payments that you have talked about, those three, the only other thing would be course of dealing with GMAC on turning in the other vehicles and being -- I know there was -- I'm going to say credit. I may be using the wrong word.
>
> [The Court]: Was he three months down on the payments that he ever turned in another vehicle?
>
> [Mr. Shoultz]: He was behind. He was behind, Judge, but I personally don't

- 3 -

know how far. I have a chart that I think on each and every one, he was behind on. But he thought the value of that vehicle was probably greater than the amount owed under the contract. This is the first one he had that he was probably -- or that he was negative on.

* * *

[The Court]: All right. If the record were to close this afternoon, I would find that Mr. Holmes is liable for $10,971.42 in damages and $18,000 in attorneys' fees for the time through trial, which in itself is an extraordinary amount for a debt collection case. But this has not been an ordinary debt collection case.

* * *

[The Court]: Now, Mr. Shoultz, I would like you to carry that information back to your client. If that's not good enough, then in all probability we will continue this trial. And whatever else happens, he will probably pay some more attorney's fees. So please inform opposing counsel and the Court within, say, by the end of the week, let's say, whether Mr. Holmes would waive the right to put on additional testimony if judgment were to be in that amount. And if not, we will find a time when we can get him in here to hear what he has to say.

Based on the trial court's statements, Holmes was required to notify the Court and GMAC by January 27, 2012 whether he wished to present additional testimony or evidence. Holmes did not do so and GMAC's attorney, on March 2, 2012, sent a letter to Holmes' attorney stating that Holmes had failed to comply with this requirement. GMAC's attorney enclosed a proposed judgment with the letter and notified Holmes that she had filed it with the trial court. Holmes did not respond to the letter or object to the proposed judgment. On March 8, 2012, the trial court entered judgment awarding GMAC damages in the amount of $10,971.42, attorney's fees in the amount of $18,000.00, and conditional attorney's fees in the event of an appeal.

## DENIAL OF DUE PROCESS

In his first issue, Holmes contends the trial court abused its discretion and violated Holmes' right to due process by conducting the trial without Holmes' presence and by not permitting him to offer evidence. He does not argue that the trial court abused its discretion by denying the motion for continuance.

- 4 -

The record before us reflects that Holmes's attorney did not object that his client's right to due process was violated by the trial court's decision to permit GMAC to present its case-in-chief without Holmes' presence. Likewise, counsel did not object when the court ruled that it would permit Holmes to present any evidence he wished to offer at a later date contingent upon Holmes notifying the court and opposing counsel that he wished to present evidence. There is no evidence showing that Holmes notified the trial court that he wished to present any evidence or that he requested a setting for that purpose. The letter sent by GMAC's counsel to Holmes' attorney on March 2, 2012 stated that Holmes had failed to indicate he wished to present any evidence and Holmes did not respond to the letter or object to GMAC's request that the court enter judgment.

To present a complaint for review on appeal, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought with sufficient specificity to make the trial court aware of the complaint. TEX.R.APP.P. 33.1(a)(1). Even constitutional complaints can be waived by failure to object at trial. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009); *Magnuson v. Mullen*, 65 S.W.3d 815, 829 (Tex.App.--Fort Worth 2002, pet. denied). We conclude that Holmes waived this issue by failing to raise it in the trial court.

To the extent Holmes's brief could be construed as raising a complaint regarding the trial court's denial of his motion for continuance, we will review the record to determine whether the trial court abused its discretion in that regard. The decision to grant or deny a motion for continuance is within the trial court's sound discretion. *See* TEX.R.CIV.P. 251. An appellate court will not reverse a judgment based on a denial of a motion for continuance absent a clear abuse of discretion. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.

- 5 -

2002).  An abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.  *Marchand*, 83 S.W.3d at 800.

Rule 251 provides that a continuance shall not be granted except for sufficient cause, supported by affidavit, or by consent of the parties, or by operation of law.  TEX.R.CIV.P. 251; *Briscoe v. Goodmark Corporation*, 130 S.W.3d 160, 169 (Tex.App.--El Paso 2003, no pet.).  Mere absence of a party does not automatically entitle him to a continuance.  *Briscoe*, 130 S.W.3d at 169, *citing Vickery v. Vickery*, 999 S.W.2d 342, 363 (Tex. 1999); *Humphrey v. Ahlschlager*, 778 S.W.2d 480, 483 (Tex.App.--Dallas 1989, no writ); *Brown v. Brown*, 599 S.W.2d 135, 137 (Tex.Civ.App.--Corpus Christi 1980, no writ).  A motion for continuance based on an absent party must contain some prognosis as to when or if the witness will ever be able to testify.  *Briscoe*, 130 S.W.3d at 169; *Humphrey*, 778 S.W.2d at 483.  A motion for continuance based on the absence of testimony must be supported with an affidavit showing: (1) the substance of the testimony; (2) the materiality of the testimony; and (3) the movant's due diligence to procure such testimony.  *See* TEX.R.CIV.P. 252.[2]  Holmes attached to his motion letters dated January 4, 2012 from his primary physician, Robert Rosen, M.D., and Matthew Lo, M.D., who is Holmes' attending physician and the partner of Dr. Rosen.  Neither letter indicated when or if Holmes would be able to attend trial or testify.  Dr. Lo stated that testing was inconclusive for the cause of the symptoms that prompted Holmes' admission to the hospital on January 3, 2012 and he was released to the care of his cardiologist, James Boehrer, M.D., on January 4, 2012.  Dr. Lo advised that Holmes refrain from any strenuous or stressful activities

---

[2]  Rule 252 provides, in relevant part, that:  "If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source."

- 6 -

including trial work until he had been evaluated by his cardiologist. Holmes did not present any evidence showing that he had seen Dr. Boehrer since January 4, 2012. Given Holmes' failure to show when he would be available to attend trial or testify, we conclude that the trial court did not abuse its discretion by denying the motion for continuance. *See Briscoe*, 130 S.W.3d at 169-70. Issue One is overruled.

## JUDICIAL BIAS

In his second issue, Holmes argues that the trial court denied him due process and a fair trial by being biased and demonstrating a deep-seated favoritism towards GMAC and antagonism towards Holmes and his attorney. A trial court has broad discretion in conducting a trial and has the authority to express itself in exercising this discretion. *Dow Chemical Company v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001). Remarks made by the judge "during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Dow Chemical*, 46 S.W.3d at 240, *quoting Liteky v. U.S.*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The judge's comments must instead show "a deep seated favoritism or antagonism that would make fair judgment impossible." *Id*.

Holmes first complains that the trial court stated the following: "[T]here is no indication here what Mr. Holmes will testify to if he were present." This comment was made while Holmes' motion for continuance was under consideration. As we observed in our discussion of Issue One, Rule 252 required Holmes to show the substance of his testimony and its materiality. *See* TEX.R.CIV.P. 252. Thus, the trial court's remark regarding Holmes' failure to make this showing was appropriate.

Holmes next argues the trial court's bias is shown by the following comments: "Well,

there are two payments shown on here. And the second one in the amount of $963.98, Mr. Holmes doesn't even claim credit for on the account history that he provided." These remarks were made while the trial court was considering the admissibility of Defendant's Exhibit 16 which showed two payments made from Holmes' bank account which were not applied to his GMAC account for the Denali. It appears the court was attempting to determine the relevance of the evidence and the court admitted the evidence after further discussion with Holmes' attorney. The record does not support Holmes' claim of judicial bias.

At one point during the trial, Holmes's attorney asked GMAC's witness whether Holmes had taken out other "Smart Leases" from GMAC. GMAC's attorney objected to the characterization of the contract as a lease and the trial court sustained the objection. In his next question, Holmes' attorney continued to assert that the contract was a lease and GMAC's attorney objected. Rather than merely sustaining the objection, the trial court stated: "It is not a lease. It is a balloon loan." Holmes maintains that this comment demonstrates bias against him. We disagree. The trial judge obviously concluded that the contract was a balloon loan, not a lease, and he made the statement to clarify the basis for his decision to sustain GMAC's objections. Simply ruling in favor of the opposing party on an objection or issue does not demonstrate bias.

Finally, Holmes argues that the following remarks by the trial court show bias:

[The Court]: All right. If the record were to close this afternoon, I would find that Mr. Holmes is liable for $10,971.42 in damages and $18,000 in attorneys' fees for the time through trial, which in itself is an extraordinary amount for a debt collection case. But this has not been an ordinary debt collection case.

* * *

[The Court]: Now, Mr. Shoultz, I would like you to carry that information back to your client. If that's not good enough, then in all probability we will continue this trial. And whatever else happens, he will probably pay some more attorney's

fees. So please inform opposing counsel and the Court within, say, by the end of the week, let's say, whether Mr. Holmes would waive the right to put on additional testimony if judgment were to be in that amount. And if not, we will find a time when we can get him in here to hear what he has to say.

When these remarks are considered in context, it is apparent that the court was attempting to convey to Holmes the court's opinion that GMAC had met its burden of proof on the breach of contract claim and had established it was entitled to attorney's fees in a substantial amount. The court effectively asked Holmes, who is an attorney, and his counsel to evaluate the benefit of presenting any evidence regarding his prior dealings with GMAC and the three payments allegedly not credited to Holmes' GMAC account for the Denali against the risk of increasing the award of attorney's fees. We do not find that the trial court's comments show deep-seated antagonism or bias against Holmes. Issue Two is overruled.

## THE AMENDED COUNTERCLAIM

In his third issue, Holmes contends that the trial court erred by striking his amended counterclaim. GMAC responds that the trial court did not abuse its discretion because the amended counterclaim was untimely, facially prejudicial, and was objected to by GMAC.

On June 12, 2010, the trial court entered a scheduling order setting an initial trial date of April 4, 2011. Holmes filed an amended counterclaim on February 8, 2011 seeking class certification on claims arising out of GMAC's enforcement of "SmartBuy" agreements in Texas. It is undisputed that this amended counterclaim added a new claim. GMAC filed a motion to strike the amendment on the ground that it was untimely and added new claims and new parties in violation of the scheduling order. The scheduling order provided that: "Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period . . . ." Under the scheduling order, any deadlines not specifically set by the court were governed by Texas Rule of Civil Procedure

190.3.  Rule 190.3(b) provides that discovery begins when suit is filed and continues until the earlier of thirty days before the date set for trial (March 5, 2011) or nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery (February 28, 2011).  TEX.R.CIV.P. 190.3(b).  Thirty days before February 28, 2011 was Saturday, January 29, 2011.  Thus, the scheduling order established the deadline for filing any amended pleadings asserting new causes of action as Monday, January 31, 2011.

Rule 63 permits a party to file amended pleadings without leave of court up to seven days before trial. TEX.R.CIV.P. 63.  This deadline does not apply when the trial court has entered a scheduling order setting a different deadline.  *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Company*, 177 S.W.3d 537, 542-43 (Tex.App.--Dallas 2005, no pet.).  A party must seek leave of court to file an amendment after the deadline established by a scheduling order. TEX.R.CIV.P. 63; *Hakemy Brothers, Ltd. v. State Bank and Trust Company, Dallas*, 189 S.W.3d 920, 924 (Tex.App.--Dallas 2006, pet. denied).

Holmes filed his amended counterclaim eight days after the deadline established by the scheduling order.  He contends, however, that the amended class action counterclaim was timely because the trial court granted his motion for continuance of the initial trial setting.  The scheduling order expressly provided that a reset or continuance of the initial trial setting would not alter any deadline established in the order unless otherwise provided by order of the trial court.  The trial court did not enter any orders modifying the deadlines of the scheduling order.  The Dallas Court of Appeals considered a nearly identical scheduling order provision in *G.R.A.V.I.T.Y.* and observed that the resetting of a trial date does not modify a deadline established by a scheduling order even if that scheduling order refers to the Rules of Civil Procedure for the initial calculation of its deadlines.  *See G.R.A.V.I.T.Y.*, 177 S.W.3d at 543 n.2.

We conclude that the deadline for filing the amended counterclaim was January 31, 2011. *See id.*, 177 S.W.3d at 544.

Rule 63 provides that leave of court shall be granted unless there is a showing that such filing will operate as a surprise to the opposing party. TEX.R.CIV.P. 63. A trial court has no discretion to refuse an amended pleading unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and is thus prejudicial on its face, and the opposing party objects to the amendment. *Celmer v. McGarry*, 412 S.W.3d 691, 711 (Tex.App.--Dallas 2013, pet. denied); *Halmos v. Bombardier Aerospace Corporation*, 314 S.W.3d 606, 622 (Tex.App.--Dallas 2010, no pet.). The Dallas Court of Appeals stated in *Celmer* and *Halmos* that an amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of the trial itself; (2) the opposing party could not have anticipated the new matter in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case. *Celmer*, 412 S.W.3d at 711; *Halmos*, 314 S.W.3d at 623. We review a trial court's enforcement of a scheduling order for abuse of discretion. *Celmer*, 412 S.W.3d at 711; *G.R.A.V.I.T.Y.*, 177 S.W.3d at 542.

The amended counterclaim asserting the class action was untimely and GMAC objected to the amendment. GMAC also established that the amendment was prejudicial on its face because it asserted a new cause of action. The amended counterclaim asserted a new substantive matter that reshaped the nature of trial. GMAC's breach of contract claim was straightforward and the addition of a class action would have drastically altered the nature of the case. Given that the discovery deadline expired less than three weeks after the amended counterclaim was filed, GMAC would have been deprived of the opportunity to adequately develop its defense.

- 11 -

There is no evidence in the record that GMAC could have anticipated the class action amendment. We conclude that the trial court did not abuse its discretion by granting GMAC's motion and striking the amended counterclaim. Issue Three is overruled.

## BAD FAITH

In Issue Four, Holmes cites *Findlay v. Cave*, 611 S.W.2d 57 (Tex. 1981) and argues that GMAC is not entitled to any attorney's fees because it acted in bad faith by refusing to accept the return of the vehicle for the final payments and simply billing Holmes for any deficiency as it had done in the past. *Findlay* stands for the proposition that a creditor's excessive demand upon a debtor precludes the creditor from recovering attorney's fees in subsequent litigation to recover the debt. *Findlay*, 611 S.W.2d at 58. In *Findlay*, the Supreme Court found that even though the creditor's demand was for an amount greater than that which the jury later determined was actually due, the amount demanded was based on the parties' written contract and the debtor had made no attempt to tender the full amount that the jury found to be actually due. *Id*. at 58. Under those circumstances, the court concluded that it could not find a sufficient level of unreasonableness or bad faith to warrant finding excessive demand as a matter of law. *Id.*

Holmes concedes he cannot show that GMAC made an excessive demand, but he argues that *Findlay* precludes recovery of attorney's fees if a creditor acts unreasonably or in bad faith when attempting to collect the debt. We have found no cases applying *Findlay* in the manner suggested by Holmes and we decline to extend its rule to cover anything other than an excessive demand. Issue Four is overruled.

## ATTORNEY'S FEES

In Issue Five, Holmes asserts that the trial court abused its discretion by awarding attorney's fees in the amount of $18,000.00 because there is factually insufficient evidence to

support the trial court's determination that the fees are reasonable and necessary. GMAC sought attorney's fees under the contract and Section 38.001 of the Civil Practice and Remedies Code. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 38.001(8)(West 2008)(providing that a person may recover reasonable attorney's fees from an individual or corporation if the claim is for an oral or written contract).

*Standard of Review*

The determination of reasonable attorney's fees is a question for the trier of fact and the appellate court may not substitute its own judgment for that of the trial court as finder of fact. *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006); *Hudspeth County Underground Water Conservation District No. 1 v. Guitar Holding Company*, 355 S.W.3d 428, 435 (Tex.App.-- El Paso 2011, pet. denied). Factors to be considered in determining the amount of reasonable attorney's fees include: (1) the time and labor required, novelty and difficulty of the question presented, and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Guitar Holding*, 355 S.W.3d at 437-38. The trial court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.*, 355 S.W.3d at 438.

Generally, we review a trial court's decision to grant or deny attorney's fees for an abuse

of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Guitar Holding*, 355 S.W.3d at 435. A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Guitar Holding*, 355 S.W.3d at 435. When reviewing a trial court's decision under this standard, we must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Guitar Holding*, 355 S.W.3d at 435-36.

GMAC's counsel, Hailey Weems, testified that GMAC is entitled to reasonable attorney's fees under the contract and reasonable and necessary attorney's fees under Section 38.001. GMAC retained the law firm of Beasley, Hightower and Hartmann to prosecute the suit. As one of the attorneys who worked on the case, Weems has knowledge of the reasonable and necessary attorney's fees. She testified that the firm could not take other employment after taking the case. Weems is familiar with the reasonable and necessary attorney's fees charged in Dallas County. Based upon the nature of the case, the amount in controversy, and the time expended on the case, which included serving discovery, answering discovery, filing motions to compel, attending hearings, preparing a response to the untimely class action counterclaim, and preparing for trial, Weems testified that the reasonable and necessary attorney's fees was $47,000. On cross-examination, Weems testified that she bills at the rate of $125 per hour and had worked approximately 330 hours on the case. In her opinion, 330 hours was a reasonable amount of time in this particular case because she had to file motions to compel discovery and a motion to strike the amended counterclaim, and she had to prepare and appear for trial on multiple occasions. She added that when Holmes filed the amended counterclaim, other attorneys who billed at the rate of $150 per hour had also been required to work on the case. Holmes did not offer any expert testimony to rebut Weems' testimony.

The trial court awarded the sum of $18,000 as attorney's fees and it noted on the record that this award is an extraordinary amount for a debt collection case, but this had not been an ordinary debt collection case. The court also observed that the rates charged by Holmes' counsel were extremely reasonable for the current market. Weems' testimony on attorney's fees is clear, positive, direct, and uncontroverted. Because the evidence supports the trial court's award of attorney's fees, we not find an abuse of discretion. Issue Five is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his sixth issue, Holmes raises two distinct arguments. First, he argues that the trial court erred by failing to make written findings of fact and conclusions of law. Second, he challenges the legal sufficiency of the evidence supporting the judgment.

### *Findings of Fact*

The trial court signed the judgment on March 8, 2012. Holmes filed his request for findings of fact and conclusions of law on March 20, 2012. Rule 296 requires a party to make a written request for findings of fact and conclusions of law within twenty days after judgment is signed. TEX.R.CIV.P. 296. A trial court's findings of fact and conclusions of law are due within twenty days after a timely request is filed. TEX.R.CIV.P. 297. If the court does not file its findings and conclusions within twenty days after a timely request, the party making the request must file with the trial court clerk within thirty days a "Notice of Past Due Findings of Fact and Conclusions of Law." TEX.R.CIV.P. 297. Because Holmes did not file a past due notice as required by Rule 297, he waived his complaint regarding the trial court's failure to file the written findings of fact and conclusions of law. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255–56 (Tex. 1984) (holding that appellate complaint regarding trial court's failure to file findings of fact and conclusions of law was waived where past-due notice

was filed four days late).

Holmes asserts that the evidence is legally insufficient to support the judgment. When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 408 (Tex.App.--Dallas 2014, no pet.); *Thornton v. Dobbs*, 355 S.W.3d 312, 315 (Tex.App.-Dallas 2011, no pet.). An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In our review, we must credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *City of Keller*, 168 S.W.3d at 827; *Wise*, 436 S.W.3d at 408. If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge fails. *Wise*, 436 S.W.3d at 408.

GMAC was required to prove that: (1) a contract existed between the parties; (2) the contract created duties; (3) the defendant breached the contract; and (4) the plaintiff sustained damages. *See National Health Resources Corporation v. TBF Financial, LLC*, 429 S.W.3d 125, 131 (Tex.App.--Dallas 2014, no pet.). It is unclear from Holmes' brief which elements he is challenging so we will review all of them.

It is undisputed that Holmes entered into the "SmartBuy" contract on September 29, 2006, when he purchased the 2007 GMC Denali from Sewell Buick Pontiac GMC in Dallas.

GMAC subsequently purchased the Contract from Sewell Buick Pontiac GMC. Under the contract, Holmes was required to make thirty-eight payments of $1,062.00 with the first payment due on November 14, 2006, and a thirty-ninth "balloon" payment of $33,126.00 on January 14, 2010. GMAC granted Holmes' request for two extensions. As a result, the final payment was due on April 14, 2010. Holmes made thirty-two payments in the amount of $1,062.00 on his account with GMAC, and two reduced payments pursuant to extension requests. Holmes tendered two other payments which did not clear the bank due to insufficient funds. GMAC presented evidence showing that Holmes defaulted on the Contract by failing to make several payments when due. Holmes paid a total of $35,046.00 on the account which is less than the amount of $40,356.00 required by the Contract, excluding the final scheduled payment of $33,126.00. After Holmes returned the vehicle, GMAC sold it for $28,500, leaving a deficiency of $15,537.81. The trial court awarded GMAC damages in the amount of $10,971.42. We conclude that GMAC proffered more than a scintilla of evidence on each element of its breach of contract claim. Accordingly, the evidence is legally sufficient to support the trial court's judgment. Issue Six is overruled.

## COURSE OF DEALING

In Issue Seven, Holmes contends that the trial court erred by refusing to consider evidence on the course of dealing between the parties. The trial court's decision to admit or exclude evidence is reviewed under the abuse of discretion standard. *See Enbridge Pipelines (East Texas) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012). Holmes directs our attention to his attorney's cross-examination of GMAC's witness, Mary Kay Mann. Holmes' attorney asked Mann whether Holmes had "taken out additional Smart Leases from GMAC". The trial court sustained GMAC's objection that counsel had incorrectly characterized

- 17 -

the contract as a lease. Holmes's attorney then asked Mann another question which characterized the contract as a lease and the trial court sustained GMAC's objection. Counsel then asked Mann whether she knew if Holmes had taken out any other balloon loans through GMAC and the trial court sustained GMAC's relevance objection. Holmes did not make an offer of proof as required by Rule 103(a)(2) to preserve error in the exclusion of evidence. *See* TEX.R.EVID. 103(a)(2). Consequently, this complaint is waived. Issue Seven is overruled. Having overruled each issue on appeal, we affirm the judgment of the trial court.

October 15, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)