GUITAR HOLDING COMPANY,
L.P., Petitioner,

v.

HUDSPETH COUNTY UNDER-
GROUND WATER CONSERVATION
DISTRICT NO. 1, et al., Respondents.

No. 06–0904.

Supreme Court of Texas.

Argued Dec. 5, 2007.

Decided May 30, 2008.

Order Granting Rehearing
Aug. 29, 2008.

Rehearing Denied Oct. 22, 2008.

Joseph L. Hood Jr., Windle Hood Alley Norton Brittain & Jay LLP, Jeffrey S. Alley, Robert Duane Frizell, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, PC, El Paso, TX, Russell S. Johnson, Carl Ryan Galant, McGinnis, Lochridge & Kilgore, LLP, Austin, TX, Warren W. Harris, Bracewell & Giuliani, LLP, Houston, TX, for Petitioner.

Max Renea Hicks, Law Office of Max Renea Hicks, R. Lambeth Townsend, Michael Allan Gershon, Judith Ilana McGeary, James Phillips, Lloyd Gosselink Blevins Rochelle & Townsend, P.C., Austin, TX, John C. Steinberger, C.R. Kit Bramblett, Hudspeth County Attorney, El Paso, TX, Jeffery B. Thompson, Granbury, TX, for Respondents.

Robin A. Melvin, Graves Dougherty Hearon & Moody, P.C., Richard W. Lowerre, Lowerre Frederick Perales Allmon & Rockwell, Dougals G. Caroom, Bickerstaff, Heath, Pollan & Caroom, L.L.P., Austin,

TX, J.B. Love, Jr., Love Law office, Marathon, TX, William Richard Thompson, III, Law Offices of Deborah Hankinson, Michael V. Powell, Locke Lord Bissell & Liddell LLP, Dallas, TX, Glenn D. Webb, TWA Counsel, San Antonio, TX, Evetts Haley, Jr., Midland, TX, Mark Adams Brown, San Angelo, TX, for Amici

Justice MEDINA delivered the opinion of the Court.

The Texas Water Code generally delegates the management and control of groundwater production and use to local groundwater conservation districts, vesting them with broad regulatory powers. TEX. WATER CODE §§ 36.001–.304. When exercising these powers to limit groundwater production, local districts may protect existing wells and production by continuing "historic or existing use" to the extent possible under its comprehensive management plan. *Id.* § 36.116(b). The scope of this "historic or existing use" exemption and the extent to which a district's rules may operate to preserve such use are at issue in this appeal.

The underlying rules here grandfather "historic or existing use" of groundwater in the district to an amount of water previously used during the relevant historic period without regard to the intended future purpose for that water. Thus, under the district rules, production from a grandfathered well, historically used to irrigate crops, can in the future be sold for transport out of the district as a preserved historic or existing use. The court of appeals upheld the district's permitting

scheme, concluding, in effect, that the district's authority to preserve the "historic or existing use" of groundwater pertained only to the amount of water used in the past and not its purpose. 209 S.W.3d 146, 158–59. We conclude, however, that the amount of groundwater used and its beneficial purpose are components of "historic or existing use" and that the district thus exceeded its rule-making authority in grandfathering existing wells without regard for both. Accordingly, we reverse the court of appeals' judgment and render judgment, declaring the district's scheme for issuing permits for the transfer of groundwater out of the district invalid.

I

Groundwater conservation districts are "the state's preferred method of groundwater management." TEX. WATER CODE § 36.0015. Chapter 36 of the Texas Water Code grants these districts broad authority to manage, conserve, and protect groundwater resources through rulemaking[1] and permitting.[2] *Id.* §§ 36.101(a), 36.113(a). Under this chapter, each groundwater conservation district is required to develop a comprehensive management plan with stated goals, such as, promoting the most efficient use of groundwater, preventing waste and subsidence, and addressing conjunctive surface water management issues, natural resource issues, drought conditions, and conservation. *Id.* § 36.1071(a)(1)-(7).

When adopting its plan, the district must consider all groundwater uses and

---

1. Through rules, a groundwater conservation district may limit groundwater production based on tract size or well spacing, provide for the conservation, preservation, protection, and recharge of groundwater to control subsidence, prevent degradation of water quality, or prevent the waste of groundwater. TEX. WATER CODE § 36.101(a).

2. The Water Code requires permits for most wells, although exception is made for certain exempt wells, which generally include wells used for domestic purposes, livestock, and oil and gas production. TEX. WATER CODE § 36.117(b)(1).

needs to develop rules that are fair and impartial. *Id.* § 36.101(a). Part of the plan must include a permitting system "for the drilling, equipping, operating, or completing of wells or for substantially altering the size of wells or well pumps." *Id.* § 36.113(a). A district may also regulate well spacing and water production. *Id.* § 36.116(a)(1)-(2). When regulating production, a district may consider: setting production limits; limiting the amount of water produced based on acreage or tract size; limiting the amount of water produced from a defined number of acres assigned to an authorized well site; limiting the maximum amount of water produced on the basis of acre-feet per acre or gallons per minute per well site per acre; managed depletion, or a combination of any of those. *Id.* § 36.116(a)(2)(A)-(F). When promulgating rules that limit groundwater production, a district may preserve historic or existing uses of groundwater in the district to the maximum extent practicable consistent with its comprehensive management plan. *Id.* § 36.116(b). Finally, the district must develop its plan using the best available data and must forward its plan to the regional water planning group for consideration in its planning process. *Id.* § 36.1071(b). The district's plan must also be certified by the Texas Water Development Board. *Id.* § 36.1072(d).

## A

The Hudspeth County Underground Water Conservation District No. 1 is situated in northeast Hudspeth County, at the western foot of the Guadalupe Mountains less than a hundred miles east of El Paso. This is an arid part of the state, averaging only eight to ten inches of rain annually. The Hudspeth District, however, includes the Bone Springs–Victorio Peak Aquifer and the fertile Dell Valley where there has been irrigation for over fifty years. Although one of the state's earliest conservation districts, having been created in response to the historic state drought of the 1950s, the District's management of the aquifer has not been a success. In fact, by mid–2000, the state auditor[3] deemed the District non-operational, questioning whether it was appropriately managing its groundwater.

In response, the District brought in an expert consultant to help bring its management plan into compliance and return to operational status. During this time, the City of El Paso targeted the area as a potential source of water for its growing demand. The Legislature was also active, amending the Water Code to facilitate the transfer of groundwater to places in need, such as growing metropolitan areas.[4] After the Seventy-seventh Legislature adjourned in 2001, the reconstituted Hudspeth District Board met to adopt a new management plan and new rules.

Under its new management plan, the District committed itself to sustaining the Bone Springs–Victorio Peak Aquifer at an historically optimal level by regulating the withdrawal of groundwater. Groundwater production was divided among three core

---

3. "A district is subject to review by the state auditor under the direction of the legislative audit committee pursuant to Chapter 321, Government Code." Tex. Water Code § 36.302(a).

4. On May 27, 2001, the Legislature enacted Senate Bill 2, which, among other things, amended Chapter 36 to prohibit groundwater districts from imposing more restrictive conditions on persons seeking permits to transport water out of a district than on existing in-district users, except in limited circumstances. Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.49, 2.52, 2001 Tex. Gen. Laws 1991, 2015, 2018 (codified as amended at Tex. Water Code §§ 36.113(e), 36.122(c)).

classes of users: (1) statutorily exempt users, (2) existing and historic users, and (3) new users, which also might include historic users seeking to increase consumption. The right to produce groundwater from completed, non-exempt wells was linked directly to the aquifer's level, although groundwater production limitations were to operate differently depending on the type of permit held by the well owner.

The District adopted the current rules on May 31, 2002. These rules recognize three types of permits: (1) validation permits, (2) operating permits, and (3) transfer permits. Wells operating before the adoption of the District's new rules are generally entitled to validation permits. If a well is not eligible for a validation permit, the landowner may apply for an operating permit. Finally, transfer permits must be obtained to transfer water out of the district. A validation or operating permit is required to obtain a transfer permit.

Landowners who qualify for validation permits are entitled to withdraw from three to four acre-feet per year, depending on the aquifer's elevation, for every acre irrigated during a designated historic and existing use period. The District's rules define this period to be ten-and-a-half years, beginning January 1, 1992, and ending May 31, 2002. Landowners with validation permits who did not irrigate during the historic use period are entitled to pro-

duce the maximum amount of water beneficially used in any one year during the period. An operating permit, on the other hand, entitles a landowner to produce water from a new well based upon surface acreage. The production right under an operating permit is further conditioned upon the elevation of the Bone Springs–Victorio Peak Aquifer. Thus, unlike the holder of a validation permit whose production rights are guaranteed, the holder of an operating permit has no right to groundwater until the aquifer reaches a designated average water level.

Transfer permits are available to any holder of either a validation or operating permit. Validation permit holders, however, particularly those held by landowners who irrigated during the historic use period, receive substantially greater transfer rights under the rules than other landowners because they receive substantially greater guaranteed allocations of groundwater than other landowners. By contrast, landowners who hold operating permits receive no guaranteed allocation and thus may not have any right to transfer water when the aquifer fails to reach the designated elevation.[5]

## B

Guitar Holding Company, one of the largest landowners in Hudspeth County, irrigated only a small portion of its land during the designated historic and existing

---

5. The following table depicts the water allocations that holders of validation and operating permits receive under Hudspeth County Underground Water Conservation District No. 1 Rule 3.5(c):

| Average Water Elevation | Validation Permit Allocation | Operating Permit Allocation |
|---|---|---|
| Greater than 3,580 feet | 4.0 acre-feet per acre per year | Pro-rata up to 4.0 acre-feet per acre per year |
| Greater than 3,570 feet but less than or equal to 3,580 feet | 4.0 acre-feet per acre per year | None |
| Equal to or greater than 3,565 feet but less than or equal to 3,570 feet | Pro-rata between 3.0 and 4.0 acre-feet per acre per year | None |
| Less than 3,560 feet | For irrigation, 3.0 acre-feet per acre per year; pro-rata for all other uses | None |

use period. It has obtained validation permits for fifteen existing wells and has made application to drill fifty-two new wells. Cimarron Agriculture Ltd., CL Machinery Company, RBB Farms, and Triple B Farms have also received validation permits from the District. Because these Hudspeth County landowners irrigated their land during the historic and existing use period, they are permitted to produce a significantly greater amount of water than Guitar, even though Guitar owns more land. Further, because the District links transfer permits to validation and operating permits, landowners with validation permits, particularly those with grandfathered irrigation rights, can transfer these greater amounts of water out of the district.

In four separate administrative appeals to the Hudspeth County District Court, Guitar challenged the facial validity of the District's new rules regarding production and transfer permits and raised as-applied challenges to the validity of permits issued to Cimarron Agriculture, CL Machinery, RBB Farms, and Triple B Farms. The district court upheld the validity of the District's rules and issued permits, and the court of appeals affirmed those rulings. 209 S.W.3d at 161. Guitar appeals, complaining the District has misapplied its limited authority to preserve existing or historic groundwater use within the district and in effect granted certain irrigators a perpetual franchise to transfer and sell Hudspeth County groundwater.

## II

Guitar complains that this franchise has been accomplished by the District linking transfer permits to validation permits that preserve the historic or existing use of groundwater within the district. Guitar argues the Water Code only authorizes a district to preserve historic or existing use of the same type or purpose. Because transferring water out of the district is a new use, it cannot be preserved or "grandfathered" under section 36.116(b), which extends only to the preservation of an existing or historic use.

The District, on the other hand, argues that the provision granting it authority to preserve historic or existing use makes sense only if "use" refers to an amount of groundwater, not its purpose. Section 36.116(b) provides:

> In promulgating any rules limiting groundwater production, the district may preserve historic or existing use before the effective date of the rules to the maximum extent practicable consistent with the district's comprehensive management plan under Section 36.1071 and as provided by Section 36.113.

TEX. WATER CODE § 36.116(b). The District submits that the provision does not address the purposes to which the production is applied but rather implies a quantity by telling districts that they may "preserve historic or existing use ... to the maximum extent practicable consistent with the district's comprehensive management plan." *Id.* From this dispute, it is apparent that the meaning of the word "use" is key to understanding a groundwater conservation district's authority to "preserve historic or existing use" through rule-making under section 36.116. *Id.*

Chapter 36 of the Water Code does not expressly define "use" or "historic or existing use." Terms that are not otherwise defined are typically given their ordinary meaning. *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex. 2002); *see* TEX. GOV'T CODE § 311.011. But undefined terms are also not construed "in isolation from the rest of the statute." *Cities of Austin, Dallas, Ft. Worth, and Hereford v. Sw. Bell Tel. Co.,* 92 S.W.3d 434, 442 (Tex.2002). They are instead to

be read in harmony with other provisions of the statute. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003).

The noun "use" ordinarily conveys something with a purpose, an object, or an end.[6] This meaning is confirmed elsewhere in the chapter when the term is combined with a type or purpose. For example, Chapter 36 defines the terms "use for a beneficial purpose," "agricultural use," and "conjunctive use." TEX. WATER CODE § 36.001(9), (20), (21). An amendment to the chapter, after the adoption of the present local rules, however, indicates that the Legislature intended for the phrase "historic or existing use" to have a slightly broader meaning.

In 2005, the Legislature added a new definition for "evidence of historic or existing use," which it defined as "evidence that is material and relevant to a determination of the amount of groundwater beneficially used" during the relevant time period. *Id.* § 36.001(29). The chapter already defined "use for a beneficial purpose" with a list of specific purposes and "any other purpose that is useful and beneficial to the user." *Id.* § 36.001(9). Read together, these definitions indicate that the amount of groundwater withdrawn and its purpose are both relevant when identifying an existing or historic use to be preserved. Indeed, in the context of regulating the production of groundwater while preserving an existing use, it is difficult to reconcile how the two might be separated. *See id.* § 36.0015 (purpose of groundwater conservation dis-

tricts is to conserve, preserve, and protect groundwater through regulation).

■ Apparently, that is the Legislature's view about groundwater permits as well. Both amount and purpose are listed in Chapter 36 as recommended elements for all well permits. *See id.* § 36.1131(a). In addition to well ownership, location, and completion date, the chapter expressly addresses both the "purpose for which the well is to be used" and the "conditions and restrictions ... on the rate and amount of withdrawal." *Id.* § 36.1131(a)(4), (8). Similarly, the District's current rules require that all applications for permits include "a statement of the nature and purpose of the proposed use and the amount of water to be used for each purpose." Hudspeth County Underground Water Conservation District No. 1 Rule 6.4(c)(3) (adopted May 31, 2002). Thus, both the amount of water to be used and its purpose are normal terms of a groundwater production permit and are likewise a part of any permit intended to "preserve historic or existing use." A district's discretion to preserve historic or existing use is accordingly tied both to the amount and purpose of the prior use.

### III

■ In a related dispute, the parties disagree about whether the transfer permits issued by the District are from new permit applications. Classification as a new · permit application is significant because a district may impose more restrictive conditions on new permit applications

---

**6.** *See* THE NEW SHORTER OXFORD ENGLISH DICTIONARY ON HISTORICAL PRINCIPLES 3531 (4th ed.1993) (defining "use" to mean, among other things, "application or conversion to some purpose," "manner or mode of using, employing, or utilizing something," and "a purpose, an object, an end"); *see also* THE AMERICAN HERITAGE COLLEGE DICTIONARY 1486 (3d ed. 2000) ("To put into service or apply for a

purpose; employ"); BLACK'S LAW DICTIONARY 1540 (7th ed. 1999) ("The application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted...."); WEBSTER'S NEW COLLEGIATE DICTIONARY 1279 (1981) ("the act or practice of employing something").

under certain circumstances. Those circumstances are set out in section 36.113(e), which provides that more restrictive permit conditions may be imposed on new applications when the limitations (1) are applied uniformly to all subsequent new permit applications, (2) bear a reasonable relationship to the existing district management plan, and (3) are reasonably necessary to protect existing use. TEX. WATER CODE § 36.113(e)(1)-(3).

Guitar argues that transferring groundwater out of the district is a new use for which a new application must be made, and that as a new permit application, the District must comply with the requirements of section 36.113(e). Guitar submits, however, that by using its rules to link transfer permits to existing permits, either validation or operating, the District has avoided applying the same limitations to all of the new transfer permit applications. Guitar further submits that the District has thereby granted certain farmers, who irrigated their land in the past, a preferential right to convert their existing irrigation wells to an entirely new use without satisfying more restrictive conditions applied to other landowners. Guitar concludes that the District has exceeded its authority by granting preferential transfer rights to some in-district users who no longer seek to preserve their historic or existing use.

The District responds that its permitting scheme complies fully with section 36.122, the provision generally applicable to groundwater transfers out of district. That section provides that "a district may not impose more restrictive permit conditions on transporters than the district imposes on existing in-district users." TEX. WATER CODE § 36.122(c). An exception is recognized for new permit applications which, as already mentioned, can include additional limitations if uniformly applied

and necessary to protect existing use. *See id.* §§ 36.122(c), 36.113(e).

The District submits that by linking transfer permits to existing permits it has strictly adhered to the statutory directive by treating in-district users and transporters identically. Under its rules, any permittee, who has the right to produce groundwater in the district under either a validation permit for existing use or an operating permit for new use, is entitled to obtain a transfer permit. Thus, the District concludes that because it has not tried to impose more restrictive permit conditions on transporters than on in-district users, section 36.113(e) does not apply.

We agree with Guitar, however, that the transfer permits here are from new permit applications. No landowner in the Hudspeth District has ever transferred water outside the district or obtained a permit to do so before the adoption of these rules. Because a landowner must have a transfer permit to transfer water outside the district, all of the transfer permit applications here are new within the meaning of section 36.113(e).

## IV

■ Generally, a groundwater district's rules and decisions are reviewed under the substantial evidence rule. *See id.* § 36.253. The review is de novo, however, when, as here, an action is challenged on the ground that the groundwater district has acted beyond its statutory authority. *See In re Entergy Corp.* 142 S.W.3d 316, 322 (Tex.2004); *see also Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 316 (Tex. 2001). Chapter 36 authorizes a groundwater district to establish different rules and limits for historic or existing use, in effect, grandfathering landowners' historic use to protect their existing investments and ac-

tivities. TEX. WATER CODE § 36.116(b). The chapter, however, also requires that all new uses be treated equally, directing that limitations may be imposed on new permit applications, but only when done uniformly and when reasonably necessary to preserve existing use. *Id.* § 36.113(e).

▮ Although there is existing irrigation use in the district, the transfer rules do not protect that existing use. Instead, the transfer rules permit in-district irrigators to convert their protected existing use to an entirely new use, that is, to transfer it out of the district for municipal and industrial purposes. Once the groundwater allocated for existing irrigation use is transferred outside the district, however, the protected existing use ends, as does the justification for protecting that use. Rather than protect historic or existing use then, the District's transfer rules, in essence, grant franchises to some landowners to export water while denying that right to others. Because the limitations are not uniformly applied to these new applications and are not necessary to protect existing use, the District's transfer rules exceed the statutory authorization and are thus invalid.

\* \* \*

Accordingly, we reverse the court of appeals' judgment and render judgment declaring the rules relating to transfer permits in Hudspeth County Groundwater Conservation District No. 1 invalid, as are the transfer permits issued pursuant thereto.

### ON MOTION FOR REHEARING

On rehearing, the District points out that the court of appeals decided several issues that were not included in the appeal to this Court. In addition to the transfer rules at issue here, Guitar Holding complained in the court of appeals about the District's permitting scheme and its application to Guitar Holding's particular circumstances. Also in the court of appeals, the District obtained a remand for the determination of certain fees and costs denied it in the trial court. *See* TEX. WATER CODE § 36.066(g) (granting district, as prevailing party, its "attorney's fees, costs for expert witnesses, and other costs").

After the court of appeals' decision in the District's favor, Guitar Holding narrowed its appeal to focus on the transfer rules. The District submits that Guitar Holding thereby abandoned these other issues but fears that our opinion and judgment may be misunderstood on this point. The District accordingly requests that we clarify that the court of appeals' judgment has been reversed only in part.

We, of course, agree that issues not presented in the petition for review and brief on the merits are waived. TEX.R.APP. P 53.2(f); TEX.R.APP. P 55.2(f); *Ramos v. Richardson*, 228 S.W.3d 671, 673 (Tex. 2007) (per curiam). We also agree that Guitar Holding abandoned some issues in its appeal to this Court and that the court of appeals' judgment remains in effect as to these abandoned issues. Accordingly, we grant the District's motion for rehearing to clarify that the court of appeals' judgment is reversed only as to that part upholding the validity of the District's transfer rules and related permits. The case is remanded to the trial court for further proceedings consistent with our opinion.