ACCEPTED
15-24-00050-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 3:25 PM
CHRISTOPHER A. PRINE
CLERK

CAUSE NO. 15-24-00050-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 3:25:18 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIFTEENTH JUDICIAL DISTRICT OF TEXAS
## AUSTIN, TEXAS

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and
GUADALUPE-BLANCO RIVER AUTHORITY,

*Appellants,*

vs.

NATIONAL WILDLIFE FEDERATION,

*Appellee.*

ON APPEAL FROM THE
98TH JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS
CAUSE NO. D-1-GN-20-007096

## REPLY BRIEF OF APPELLANT
## GUADALUPE-BLANCO RIVER AUTHORITY

Macey Reasoner Stokes
State Bar No. 00788253
macey.stokes@bakerbotts.com
BAKER BOTTS L.L.P.
910 Louisiana
Houston, TX 77002
(713) 229-1369
(713) 229-7869 (fax)

Samia Broadaway
State Bar No. 24088322
samia.broadaway@bakerbotts.com
Molly Cagle
State Bar No. 03591800
molly.cagle@bakerbotts.com
John Ormiston
State Bar No. 24121040
john.ormiston@bakerbotts.com
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, TX
(512) 322-2500
(512) 322-2501 (fax)

*Counsel for Appellant Guadalupe-Blanco River Authority*

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................ ii

Introduction .........................................................................................................1

Argument..............................................................................................................1

    I.       NWF has not shown that the specific errors it asserts in the
             Commission's Order prejudiced its substantial rights. ........................ 1

    II.     NWF also lacks APA standing to bring this administrative appeal..... 6

    III.    NWF misinterprets Chapter 11 of the Water Code........................... 10

         A.     The text of Section 11.152 of the Water Code must be read in
               the context of Chapter 11 as a whole, including its purpose. ... 10

         B.     The Permit does not implicate any non-flow environmental
               impacts within the scope of Chapter 11.................................. 16

Prayer .................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Houston v. Pub. Util. Comm'n of Tex.*,
599 S.W.2d 687 (Tex. Civ. App.—Austin), *writ ref'd n.r.e.*, 610 S.W.2d 732
(Tex. 1980)......................................................................................................7

*City of Rockwall v. Hughes*,
246 S.W.3d 621 (Tex. 2008) ........................................................................10

*City of Schertz v. Tex. Comm'n on Env't Quality*,
653 S.W.3d 468 (Tex. App.—Amarillo 2022, no pet.) ......................................5

*Dyer* v. *Tex. Comm'n on Env't Quality*,
646 S.W.3d 498 (Tex. 2022) ...........................................................................2

*Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conservation
Dist. No. 1*, 263 S.W.3d 910 (Tex. 2008) .......................................................11

*Hooks v. Tex. Dep't of Water Res.*,
602 S.W.2d 389 (Tex. Civ. App.—Austin 1980), *rev'd*, 611 S.W.2d 417 (Tex.
1981) ................................................................................................................7

*Hooks v. Tex. Dep't of Water Res.*,
611 S.W.2d 417 (Tex. 1981) ..............................................................6, 7, 8, 9

*Malouf v. State ex rels. Ellis*
694 S.W.3d 712 (Tex. 2024) .....................................................................10, 14

*Nobles v. Employees Ret. Sys. of Tex.*,
53 S.W.3d 483 (Tex. App.—Austin 2001, no pet.).............................................3

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*,
336 S.W.3d 619 (Tex. 2011) ....................................................................14, 15

*Save Our Springs All., Inc. v. City of Dripping Springs*,
304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied) ....................................7

*Tex. Dep't of Transp. v. City of Sunset Valley*,
146 S.W.3d 637 (Tex. 2004) ........................................................................11

*Tex. Disposal Sys. Landfill, Inc. v. Tex. Comm'n on Env't Quality*,
259 S.W.3d 361 (Tex. App.—Amarillo 2008, no pet.) ....................................6

*Tex. Rivers Prot. Ass'n v. Tex. Nat. Res. Conservation Comm'n*,
910 S.W.2d 147 (Tex. App.—Austin 1995, writ denied)...................................9

*Wal-Mart Stores, Inc. v. Forte*,
497 S.W.3d 460 (Tex. 2016) ........................................................................15

**STATUTES**

TEX. GOV'T CODE § 311.011 ..........................................................................10

TEX. GOV'T CODE § 311.023..........................................................................14

TEX. GOV'T CODE § 2001.171..................................................................2, 6, 9

TEX. GOV'T CODE § 2001.174.......................................................................1, 2

TEX. WATER CODE § 11.002(5)..................................................................12, 17

TEX. WATER CODE § 11.002(16)......................................................................17

TEX. WATER CODE § 11.021(a).........................................................................13

TEX. WATER CODE § 11.022 ...........................................................................12

TEX. WATER CODE § 11.147(e)...................................................................16, 17

TEX. WATER CODE § 11.147(e-3) ...............................................................16, 17

TEX. WATER CODE § 11.1471(1)......................................................................17

**REGULATIONS**

30 TEX. ADMIN. CODE § 55.251(a) .....................................................................9

30 TEX. ADMIN. CODE § 297.1(4) ....................................................................12

30 TEX. ADMIN. CODE § 298.5 ..........................................................................8

30 T. A. C C § 298.355(7) ....................................................................17

### RECORD REFERENCES AND CITATIONS

The Reporter's Record is cited as "RR [page number]:[line number]."

The complete Administrative Record from the TCEQ proceedings is included as Exhibit 1 to the Reporter's Record. The Administrative Record is cited directly herein as "AR [item no.]" and "at [page number or Bates number]" where applicable.

The Clerk's Record is cited as "CR [page number]." The Supplemental Clerk's Record is cited as "Supp. CR [page number]."

In citations to a TCEQ Final Order, "Finding(s) of Fact" is abbreviated as "FOF" and "Conclusion(s) of Law" is abbreviated as "COL."

## INTRODUCTION

NWF's brief wholly fails to link the findings and conclusions it challenges on appeal to its members' asserted interests in the San Antonio Bay. The APA therefore bars NWF's contention that it has a "substantial right" to impede the issuance of a state water right for an essential municipal water supply. But even setting aside the lack of prejudice to NWF's substantial rights and NWF's lack of standing, the Commission did not err in issuing the Order granting Permit 12378. The Commission correctly found that all environmental reviews required by Chapter 11 of the Texas Water Code were conducted and that the Permit complies with all Senate Bill 3 environmental flow standards. This Court should therefore reverse the district court's judgment, reinstate the Commission's Order, and allow a regional water supplier—which requested this water right 17 years ago—to use state water to satisfy the I-35 corridor's immense (and growing) demand for water supply.

## ARGUMENT

### I. NWF has not shown that the specific errors it asserts in the Commission's Order prejudiced its substantial rights.

NWF's brief attempts to sidestep the statutory requirement that a party seeking reversal of an agency order affirmatively demonstrate that the asserted error prejudiced its substantial rights. *See* TEX. GOV'T CODE § 2001.174(2). NWF claims it met its burden merely because "the Commission's Final Order is not the result sought by NWF and does not provide the relief requested by NWF and its members."

1

NWF Br. 18. According to NWF, then, the simple fact that it did not want the Commission to grant the Permit conclusively establishes both that NWF has substantial rights and that those rights were prejudiced by the asserted error in the Commission's Order. *See id.* at 19 (asserting harm merely "[b]ecause TCEQ issued GBRA a water right"). The law does not support NWF's suggestion that a protesting party automatically has a "substantial right" in permit denial and suffers prejudice in permit issuance.[1]

NWF's contention contravenes the plain text of Section 2001.174 of the APA, which entitles an appellant to reversal only if it proves that its *own* rights—the "substantial rights of the appellant"—have been "prejudiced *because* the administrative findings, inferences, conclusions, or decisions are" erroneous in one of the six listed ways. TEX. GOV'T CODE § 2001.174(2) (emphasis added); *see Dyer* v. *Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022) ("Not only must the agency's challenged findings, inferences, conclusions or decisions be faulty as a matter of law; they must also prejudice the substantial rights of the appellant." (internal quotation marks omitted)). Mere opposition to a permit proves nothing.

---

[1] NWF also claims it met the substantial rights requirement because it is "aggrieved" by the issuance of the Permit. NWF Br. 18. NWF thus confuses Section 2001.174's "substantial rights" requirement for reversal with Section 2001.171's distinct standing requirement for seeking judicial review of an agency decision. *See* TEX. GOV'T CODE § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). Whether NWF is "aggrieved" such that it has standing to seek judicial review of the Order is addressed *infra* in Part II.

2

Indeed, NWF's interpretation renders Section 2001.174(2)'s prejudice requirement mere surplusage, because a party who protests permit issuance would satisfy the "substantial rights" inquiry in *every* challenge arising out of an agency order granting a permit, regardless of whether any specifically alleged error actually prejudiced the protesting party. *Cf. Nobles v. Employees Ret. Sys. of Tex.*, 53 S.W.3d 483, 489 (Tex. App.—Austin 2001, no pet.) ("A showing of injury to the claimant is necessary before reversal is the appropriate remedy." (citing TEX. GOV'T CODE § 2001.174(2))).

NWF's attempt to premise a substantial right on certain NWF members' economic interests in conditions at San Antonio Bay is simply another variation on this theme. CR 6-7. NWF asserts that the Permit "authoriz[es] GBRA to *divert more water* from the Guadalupe River before it reaches the [San Antonio] Bay," which "contributes to salinity issues in the Bay," which in turn impacts its member's "economic and property interests, as well as his constitutional right to fish." NWF Br. 19, 20 (emphasis added).[2] But this is just another way of complaining about the mere fact that the Permit allows GBRA to take water, unrelated to any specific error asserted on appeal. *See* NWF Br. 19 ("*Had [NWF member] Blevins and NWF prevailed in convincing TCEQ that GBRA's applications should be denied*, because

---

[2] NWF does not cite to any findings on the Permit's impact on the salinity of San Antonio Bay. Indeed, this was not a focus of proceedings below because, as discussed *infra* in Part III.B, such issues were fully addressed by implementation of the environmental flow standards under SB 3.

3

the required assessments had not been performed . . . , then Blevins' interest would have been protected by the Commission's decision." (emphasis added)).

NWF's brief completely fails to tie the alleged impact on flows to the Bay to any of its specific complaints on appeal, such as the failures to assess the local environmental impacts of a hypothetical off-channel reservoir and to pinpoint the precise take point within the diversion reach on the Guadalupe River. None of these alleged errors has any effect on the inflows to the San Antonio Bay, and addressing them—by performing a terrestrial habitat study at an *off-channel* reservoir site or by identifying and studying a specific diversion point within the designated reach— would not change the amount of water GBRA is permitted to take and would not cure the "prejudice" NWF alleges, which was allowing GBRA to take the authorized volumes of water from the Guadalupe River at all. *See* GBRA Br. 20-21; TCEQ Br. 32-34.

NWF has not asserted any error in the Commission's flows assessment on appeal, nor could it collaterally attack the duly adopted environmental flow standards for this Basin. Those regulatory standards, required by the Legislature via the passage of SB 3, set forth the substantive requirements for new water rights like the Permit and were, themselves, the product of extensive stakeholder involvement

4

(including from NWF and GBRA) and proper APA rulemaking.[3] The Commission expressly found that the Permit fully complies with the adopted standards, including that the Permit "properly applies and implements" the "freshwater inflow standards for the San Antonio Bay," AR 182 at FOF 83, and that "GBRA's proposed diversion will not impair the inflow regimes into San Antonio Bay," *id.* at FOF 81. NWF's failure to challenge those findings on appeal (or the standards themselves a decade ago) forecloses any attempt to rely on them now to show the requisite prejudice to its substantial rights.

This Court should reject NWF's attempt to obtain reversal without making the statutorily-required showing. *See City of Schertz v. Tex. Comm'n on Env't Quality*, 653 S.W.3d 468, 474 (Tex. App.—Amarillo 2022, no pet.) (observing that an appellant's "failure" to prove "how [its] substantial rights have been prejudiced on account of the Commission's findings and conclusions . . . militates against reversal . . . even if the Commission's findings and conclusions are unsupported").

---

[3] During the SB 3 rulemaking, parties appeared and argued that the SB 3 rules should provide for additional environmental reviews related to needs beyond the environmental flow standards. *See* GBRA Br. 44 n.21. TCEQ rejected those arguments, and NWF did not appeal the issuance of the SB 3 rules. *Id.*

**II. NWF also lacks APA standing to bring this administrative appeal.**

NWF's brief fails to establish its standing under the APA to bring this administrative appeal.[4] The APA provides that a person "who is aggrieved by a final decision in a contested case is entitled to judicial review," TEX GOV'T CODE § 2001.171, and the Texas Supreme Court has held that "[t]he term 'aggrieved' [in the APA] . . . relate[s] to the requirement that a person show a 'justiciable interest.'" *Hooks v. Tex. Dep't of Water Res.*, 611 S.W.2d 417, 419 (Tex. 1981). But as with its substantial-rights argument discussed above, NWF reduces APA standing to a simple showing that the party opposed the permit. *See* NWF Br. 22 ("Here, the Commission's Order was *adverse* to NWF; NWF was 'aggrieved' by the Commission's decision—*i.e.*, its Final Order."). Such an interpretation would render the requirement meaningless because it would be satisfied in every case.

NWF does not explain how the Order represents "a concrete, particularized, actual or imminent injury" to NWF, *Tex. Disposal Sys. Landfill, Inc. v. Tex. Comm'n on Env't Quality*, 259 S.W.3d 361, 363 (Tex. App.—Amarillo 2008, no pet.), beyond reiterating its members' economic interests in the water flows to the San Antonio Bay. As discussed *supra* in Part I, these rights suffer no harm from the particular

---

[4] The "appeal" at issue here is NWF's suit for judicial review brought in Travis County District Court pursuant to Chapter 2001 of the APA. *See* TEX. GOV'T CODE § 2001.171 *et seq*. To the extent NWF couches GBRA's argument as related to NWF's standing to appeal the district court's judgment to this Court, that is incorrect.

6

findings and conclusions that NWF challenges on appeal.[5]  "It is well established that one may not complain of errors in a judgment which do not affect him injuriously or which merely affect the rights of others." *City of Houston v. Pub. Util. Comm'n of Tex.*, 599 S.W.2d 687, 689 (Tex. Civ. App.—Austin) (holding that APA required party appealing PUC rate order to "allege and show how he has been injured or damaged"), *writ ref'd n.r.e.*, 610 S.W.2d 732 (Tex. 1980).  Because NWF failed to establish it was "aggrieved" by the Order within the meaning of the APA, it lacks standing.

The Texas Supreme Court's opinion in *Hooks*, relied on by NWF, does not alter this conclusion.  *See* 611 S.W.2d 417.  In *Hooks*, the Austin Court of Appeals correctly stated that "[w]ithout some showing that appellants have been affected or aggrieved by the agency's decision, a review of the agency's administrative procedure would clearly be an advisory opinion on how the agency should conduct its business." *Hooks v. Tex. Dep't of Water Res.*, 602 S.W.2d 389, 393 (Tex. Civ.

---

[5] In this Court, NWF has dropped its previous attempt to predicate standing on its alleged generalized "rights as an organization to ensure protection of fish and wildlife populations." CR 460-61 (NWF's reply brief in district court).  Texas law recognizes no such basis for standing. *See Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2010, pet. denied) ("There is no Texas authority for the proposition that . . . [an] injury to [an organization's] members' environmental, scientific, and recreational interests generally and without any interest in or connection to the real property involved—is the type of interference with a legally protected interest or injury that confers standing as a matter of state law.").  Contrary to NWF's contention, *see* NWF Br. 22, GBRA does not contend that NWF's standing can *only* be shown by a real property interest, but rather that NWF cannot rely on generalized claims of environmental harm to supply the necessary justiciable interest, *see* GBRA Br. 27-28.

7

App.—Austin 1980), *rev'd*, 611 S.W.2d 417.  In reversing the court of appeals' conclusion that the appellant landowner lacked standing, the Texas Supreme Court did not reject this well-established principle on advisory opinions—indeed, the Court expressly acknowledged that the APA requires an "aggrieved" party to demonstrate harm to its "justiciable interest."  *Hooks*, 611 S.W.2d at 419.  Rather, the Court reversed because it found that the appellants were aggrieved based on their interest in riparian property that would be subject to substantial additional flow-throughs if the wastewater discharge permit were granted.  *See id.*  Moreover, the agency in *Hooks* did not dispute the protestant's standing.  *See id.* (noting that "[t]he Department of Water Resources, in briefs and at oral argument before this Court, concede[d] that the Hooks are affected or aggrieved by the Department's order").  In contrast, here, there has been no showing that the impacts on flows will injure NWF's interests—on the contrary, the Commission found that "inflows will be adequately protective of downstream waters,"[6] and NWF did not appeal this point. NWF Br. 28.

---

[6] The Commission did not make this finding in the Order; rather, it made this finding when it adopted the SB 3 standards via rulemaking.  *See* 30 TEX. ADMIN. CODE § 298.5 ("The finds that the environmental flow standards adopted herein are adequate to support a sound ecological environment . . . .").  Then, in the Order at issue, the Commission found that "[a]s found by the Commission in 30 Texas Administrative Code § 298.360(c), the sound ecological environment in the San Antonio Bay can best be maintained by a set of freshwater inflow standards,"  AR 182 at FOF 76, and that the Permit "properly applies and implements" such standards, *id.* at FOF 83.

Nor does *Hooks* stand for the proposition that participation in a hearing before the TCEQ automatically confers standing to bring an APA appeal from the TCEQ's subsequent decision. *See id.* In fact, courts have explicitly rejected that proposition. *See Tex. Rivers Prot. Ass'n v. Tex. Nat. Res. Conservation Comm'n*, 910 S.W.2d 147, 151 (Tex. App.—Austin 1995, writ denied) ("That a party had standing before the agency does not necessarily mean that it has standing for judicial review . . . .").[7] Certainly, "affected person" status before an agency *can* be related to standing on appeal: for instance, both statuses might rely on the same facts, but only if the appealing party seeks to address a legal error that impacts those identified rights. *See* 30 TEX. ADMIN. CODE § 55.251(a) (providing that "affected persons, when authorized by law" have standing to request a contested case hearing on an application to the TCEQ). But here, fixing the errors NWF alleges in the Permit will not address NWF's alleged harm because any water right granted to GBRA would still authorize the "additional large diversion of water from the River" that NWF opposes. NWF Br. 25; *see supra* Part I.

Because NWF can show neither prejudice to its substantial rights from the errors it asserts nor a justiciable interest in this administrative appeal, the Court need

---

[7] NWF spends a portion of its brief arguing that the findings on NWF's affected person status before the TCEQ and the State Office of Administrative Hearings justify its standing to bring this appeal. *See* NWF Br. 28-30. The Court need not consider these arguments, as they are manifestly irrelevant to whether NWF has standing under APA Section 2001.171 to bring its suit for judicial review of the Commission's Order.

not consider the merits of NWF's challenge to the Order. Nevertheless, there are no errors in the Permit that would support reversal.

## III.  NWF misinterprets Chapter 11 of the Water Code.

Two central mandates govern the plain-language construction of statutes: the words and their context. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("We construe the words in light of their statutory context, considering the statute as a whole."); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 632 (Tex. 2008) (Willett, J., dissenting) ("Given the power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases, or forced readings that are exaggerated, or at the other extreme, constrained."); *see also* TEX. GOV'T CODE § 311.011 (Code Construction Act) (providing that "[w]ords and phrases shall be read in context"). By ignoring the second of these principles—statutory context—NWF distorts the first—statutory text.

### A. The text of Section 11.152 of the Water Code must be read in the context of Chapter 11 as a whole, including its purpose.

Chapter 11 governs state water and watercourses, and TCEQ's Water Availability Division holds state water in trust pursuant to Chapter 11's commands. *See* GBRA Br. 35-38. This Court should reject NWF's attempt to upend the statutory structure by interfering with TCEQ's proper function and injecting matters unrelated to the appropriation of state water from watercourses—such as the

10

terrestrial environmental consequences of building off-channel reservoirs—into the water rights permitting process.

NWF's argument as to why Chapter 11 requires an environmental assessment of any off-channel reservoirs before issuing water rights can be distilled this way: the phrase "assess the effects of the Permit" in Section 11.152 is "unambiguous" and therefore *all* environmental effects of the Permit, including off-watercourse, terrestrial impacts of a potential off-channel reservoir, must be evaluated under that section before a water right can issue. NWF cites cases about the general import of "unambiguous" text but no cases specifically addressing Chapter 11's scope and purpose.

NWF's argument myopically views individual words in isolation from their statutory framework. That is the opposite of how statutes are construed: "[U]ndefined terms are also not construed in isolation from the rest of the statute. They are instead to be read in harmony with other provisions of the statute." *Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 915-16 (Tex. 2008) (interpreting Chapter 36 of the Water Code) (internal quotation marks omitted); *see Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) (courts "must read the statute as a whole and not just isolated portions").

NWF focuses so intently on the single word "effects" that it misses the forest for the trees. The "forest" here is Chapter 11 of the Water Code, which governs appropriations of state water. *See* TEX. WATER CODE § 11.022 ("The right to the use of state water may be acquired by appropriation in the manner and for the purposes provided in this chapter. When the right to use state water is lawfully acquired, it may be taken or diverted from its natural channel."). An appropriation (or "appropriative right") is the right to "impound, divert, store, take or use a specific quantity of state water acquired by law." 30 TEX. ADMIN. CODE § 297.1(4); *see* TEX. WATER CODE § 11.002(5) (state water right allows person to "impound, divert, or use state water").[8] An appropriative right represents the specific authorization to use an allocation of the state's water resource (surface water flowing in a watercourse) that the state grants an applicant (such as a municipal water supplier). Upon receipt of a water rights permit under Chapter 11, a party "appropriates" or "take[s]

---

[8] The act of appropriation is singular—it occurs the moment state water is "impound[ed], divert[ed], or use[d]," TEX. WATER CODE § 11.002(5), in a manner different from the water's previous flow through "its natural channel," *id.* § 11.022. Thus, in the context of Chapter 11 appropriations of state water, the term "impound" encompasses the on-channel storage of state water behind a dam—creating a reservoir along the watercourse—but not an *off*-channel reservoir that stores *previously appropriated* state water, perhaps miles from the watercourse. The distinction between appropriative storage (on-channel) and non-appropriative storage (off-channel) explains why off-channel reservoirs do not, themselves, require a water right under Section 11.121, but on-channel reservoirs do. *See* AR 258 at 27:3-9 (testimony of TCEQ's Dr. Kathy Alexander); AR 212 at 5:1-5, 9:25-10:6 (expert testimony of Samuel K. Vaugh). It also explains why NWF's arguments related to the terms "impound" and "store" are inapposite: the mere fact that an off-channel reservoir may hold (or "store") previously appropriated water does not make the full scope of Chapter 11 apply to that off-channel reservoir because off-channel storage is not an appropriative act. *See* NWF Br. 43.

exclusive possession of"[9] the state's water, by, for example, removing it from the watercourse.

The act of "appropriating" state water necessarily requires an activity in relation to the watercourse because state water is defined with respect to a watercourse. TEX. WATER CODE § 11.021(a) ("The water of the ordinary flow, underflow, and tides *of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico*, and the storm water, floodwater, and rainwater *of every river, natural stream, canyon, ravine, depression, and watershed* in the state is the property of the state." (emphasis added)). Therefore, the proper interpretation of the undefined term "effects" in Section 11.152 must consider the context of appropriations relative to the watercourse, and the "effects" of the permit that authorizes taking exclusive possession of state water from a watercourse. The "effects" of an appropriation are, by definition, limited to effects on state water, which is defined relative to a watercourse. They do not extend to off-watercourse consequences, such as water towers, distribution lines, or off-channel reservoirs, because those activities do not appropriate state water from watercourses.

By stretching the scope of Section 11.152's required review beyond the appropriation of state water, NWF's position also violates the related statutory

---

[9] *Appropriate*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/appropriate (last visited Jan. 28, 2025).

principle that a statute's purpose can inform the meaning of its text. TEX. GOV'T CODE § 311.023(1)-(2) (Code Construction Act) (Courts may consider the "object sought to be obtained" by the statute and "the circumstances under which the statute was enacted."); *see Malouf*, 694 S.W.3d at 730-31 (holding that statute's purpose provided additional support for court's textual interpretation).

Take *Railroad Commission of Texas v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011), for example. There, the Texas Supreme Court considered the scope of the inquiry that Section 27.051(b) of the Water Code requires the Texas Railroad Commission ("RRC") to conduct into the "public interest" affected by an injection well. *Id.* at 622. The "crux of the dispute" was "whether the term 'public interest' in section 27.051(b) of the Water Code is a broad, open-ended term, encompassing any conceivable subject potentially affecting the public, or a more narrow term that does not include a subsidiary issue like traffic safety but is limited to matters related to oil and gas production." *Id.* at 624. In rejecting the appellants' contention that the public-interest inquiry broadly encompassed certain "traffic-safety concerns" about well operations, the supreme court relied on "[t]he Commission's purpose" of conserving oil and gas and the fact that "nothing in any of the [RRC's] enabling acts grants the [RRC] authority over matters related to traffic safety." *Id.* at 631-32. "Public interest" should not be read so expansively, the court held, as to include "any number of concerns impacting the

public interest entirely unrelated to the Commission's express legislative directives." *Id.* at 631.

Here, the purpose of Chapter 11 is to govern appropriations of state water. *See supra* p. 10-12. Under the reasoning of *Texas Citizens for a Safe Future & Clean Water*, the phrase "assess the effects of the permit" in Section 11.152 should not be read so expansively as to encompass *any and all* possible effects from the issuance of the water right permit, however remote or contingent, and however unrelated to the appropriation of state water from or in watercourses, such as the environmental impacts of off-channel storage of appropriated water. *See Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 466 (Tex. 2016) (reading statutory provision in light of purpose served by chapter of which it was a part and rejecting interpretation that "would impair [the chapter's] purpose").

NWF denies that its interpretation would extend Section 11.152's evaluation to "any and all cumulative effects related to an appropriation of state water," asserting that "GBRA has failed to quote or cite anything in the record to support its assertion" to this effect. NWF Br. 47. On the contrary, GBRA cited NWF's expert's live testimony at the contested case hearing that Section 11.152's required assessment extends to the piping between the on-channel diversion and the off-channel reservoir and even the water distribution system to GBRA's future

municipal customers. *See* GBRA Br. 37 (citing AR 284 at 330:23-331:4, 335:21-336:12).

NWF now attempts to walk back its position to make it seem more reasonable, claiming the scope of review encompasses off-channel reservoirs, but not any other off-channel infrastructure such as piping or a distribution system. NWF Br. 46-47. NWF's new line-drawing is completely arbitrary and without any textual or contextual support. The correct reading of Section 11.152, as advocated by GBRA and TCEQ, properly considers the context and purpose of Chapter 11 to conclude that environmental assessments of non-appropriative acts, such as subsequent storage of diverted state water in an off-channel reservoir, are not required before TCEQ may issue a water right under Chapter 11. GBRA Br. 32-34; TCEQ Br. 43-47. This Court should properly recognize Chapter 11's limits based on the statute's subject matter and purpose and decline to adopt the overbroad reading urged by NWF.

**B.      The Permit does not implicate any non-flow environmental impacts within the scope of Chapter 11.**

In its opening brief, GBRA explained why and how Water Code Sections 11.147 and 11.147(e-3) displaced the Section 11.152 evaluation for diversions in river basins with adopted SB 3 environmental flow standards. *See* GBRA Br. 42-47. The plain language of Section 11.147(e-3) provides that the Commission, in considering a request to appropriate state water, "shall apply any applicable

16

[environmental flow] standard [adopted for the basin at issue] . . . *instead of* considering," TEX. WATER CODE § 11.147(e-3), the factors set out in Section 11.147, which includes "any assessment performed under Section 11.152," *id.* § 11.147(e). NWF nevertheless insists that the Legislature intended for TCEQ's Water Availability Division to undertake broad environmental reviews of terrestrial habitat impacts independent of and in addition to complying with the SB 3 standards.

NWF's argument not only contravenes the statutory text, but it also misunderstands the nature and scope of the adopted SB 3 standards, which fully address any impacts to habitat, whether aquatic or terrestrial, that may be caused by GBRA's diversion of state water. The SB 3 standards set environmental flow regimes that are broadly intended to support "a sound ecological environment." TEX. WATER CODE § 11.002(16) ("Environmental flow regime' means a schedule of flow quantities that reflects seasonal and yearly fluctuations that typically would vary geographically, by specific location in a watershed, and that are *shown to be adequate* [1] *to support a sound ecological environment* and [2] to maintain the productivity, extent, and persistence of key aquatic habitats in and along the affected water bodies" (emphasis added)); *id.* § 11.1471(1) (reiterating that environmental flow standards must be "adequate to support a sound ecological environment"); *see* 30 TEX. ADMIN. CODE § 298.355(7) (defining "sound ecological environment" as

17

one that "maintains, to some reasonable level, the physical, chemical, and biological attributes and processes of the natural system").

Where, as here, a permit authorizes the appropriation of state water by diverting it from a watercourse—akin to placing a drinking straw in the river—the SB3 standards fully address any ecological impacts from that diversion. In contrast, appropriation by storing state water on the watercourse behind a dam—*i.e.*, an on-channel reservoir—alters and extends the state watercourse laterally, into terrestrial habitats. Because SB 3 standards were set for the watercourse *as it currently exists*, not as it might be extended behind a new dam, it is possible that in such a case there might be additional habitat impacts not covered by SB 3. But this Court need not examine such hypotheticals or reach that interpretive issue here. By its terms, SB 3 alone establishes the habitat evaluation required by Chapter 11 for an appropriation by simple diversion like GBRA's appropriation under Permit 12378.

## PRAYER

GBRA respectfully requests the Court (1) reverse the district court's judgment and (2) affirm TCEQ's Order issuing Permit 12378 or, alternatively, dismiss NFW's suit for judicial review of TCEQ's Order for lack of standing.

Respectfully submitted,

Samia Broadaway
State Bar No. 24088322
samia.broadaway@bakerbotts.com
Molly Cagle
State Bar No. 03591800
molly.cagle@bakerbotts.com
John Ormiston
State Bar No. 24121040
john.ormiston@bakerbotts.com
BAKER BOTTS L.L.P.
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
(512) 322-2500
(512) 322-2501 (fax)

Macey Reasoner Stokes
State Bar No. 00788253
macey.stokes@bakerbotts.com
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002-4995
(713) 229-1369
(713) 229-7869 (fax)

***Attorneys for Appellant Guadalupe-Blanco River Authority***

19

## CERTIFICATE OF COMPLIANCE

This brief contains 4,622 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Samia Broadaway*
Samia Broadaway

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle  Wyman on behalf of Samia Broadaway
Bar No. 24088322
michelle.wyman@bakerbotts.com
Envelope ID: 96701551
Filing Code Description: Other Brief
Filing Description: Reply Brief of Appellant Guadalupe-Blanco River Authority
Status as of 1/28/2025 3:30 PM CST

Associated Case Party: Guadalupe-Blanco River Authority

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Macey ReasonerStokes | | macey.stokes@bakerbotts.com | 1/28/2025 3:25:18 PM | SENT |
| Molly Cagle | 3591800 | molly.cagle@bakerbotts.com | 1/28/2025 3:25:18 PM | SENT |
| Samia Broadaway | 24088322 | samia.broadaway@bakerbotts.com | 1/28/2025 3:25:18 PM | SENT |
| John Ormiston | 24121040 | john.ormiston@bakerbotts.com | 1/28/2025 3:25:18 PM | SENT |

Associated Case Party: National Wildlife Federation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Marisa Perales | 24002750 | marisa@txenvirolaw.com | 1/28/2025 3:25:18 PM | SENT |
| Claire Hamerlinck | | claire@txenvirolaw.com | 1/28/2025 3:25:18 PM | SENT |

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Erin Snody | | erin.snody@oag.texas.gov | 1/28/2025 3:25:18 PM | SENT |
| Katie B.Hobson | | katie.hobson@oag.texas.gov | 1/28/2025 3:25:18 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Laura Courtney | | laura.courtney@oag.texas.gov | 1/28/2025 3:25:18 PM | SENT |