

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00487-CV

———————————————

IN THE INTEREST OF M.H., S.H., AND B.H., CHILDREN

---

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-743622-23

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

## I. INTRODUCTION

Following a bench trial, the trial court terminated the parental rights of Appellants K.H. (Father) and J.D. (Mother) to their children M.H., S.H., and B.H.[1] (children). Father and Mother both appealed.

In their respective appeals, Father's attorney filed an *Anders* brief,[2] and Mother complained that the trial court (1) abused its discretion by denying her motion for continuance and (2) erred in finding that it was in the children's best interest to terminate her parental rights because the evidence was legally and factually insufficient. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, the Texas Department of Family and Protective Services (the Department) received a referral that Mother had given birth to a child (B.H.) who tested positive for methamphetamine. Mother also had two other young children (M.H. and S.H.), and Father was the parent of all three children.[3]

---

[1]We refer to the children using aliases and to other family members by their relationship to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]*See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967).

[3]The record is unclear of when, but sometime before the termination trial, Mother raised the issue of parentage and named a different father for M.H.; however, Father did not contest his parentage or request DNA testing.

Following B.H.'s birth, Mother admitted to the Department that she recently used methamphetamine and marijuana and explained that she had a long history of bipolar disorder, depression, and substance abuse.  Based on B.H.'s positive drug test, the Department believed that there was neglectful supervision, and it opened a Family-Based Safety Services (FBSS) case.[4]  After developing a safety plan, the Department permitted B.H. to leave the hospital with Father and Mother.[5]  The plan prescribed that Mother had to complete random drug testing, an assessment with recovery resources, and parenting classes, as well as follow any of the Department's other recommendations.  The plan also required Father and Mother to be supervised at all times when they were with the children.

However, later that month, the Department became concerned with Father and Mother's compliance with the safety plan.  On one occasion, Mother left the children inside an unattended car at the Department's parking lot, and on another occasion, the children were left unsupervised with Father and Mother.

---

[4]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department."  40 Tex. Admin. Code § 700.710 (2021).

[5]At the time of B.H.'s birth, Father and Mother had custody of all three children.

On December 1, 2023, the Department sought to temporarily remove the children[6] from Father and Mother's care due to safety concerns and because there were no other family members[7] who could take care of the children long-term. At removal, all three children tested positive for controlled substances.

Following the children's removal, the Department created another service plan for Mother which, in addition to the prior plan's requirements, included drug and alcohol counseling, individual counseling, and a program called FOCUS for Mothers. A few months later, the Department again amended the plan to include relationship counseling, a domestic-violence assessment, and a psychological assessment.

Mother completed the psychological assessment, inquired about FOCUS for Mothers, and contacted the provider for the domestic-violence assessment; however, she did not engage with or complete the drug assessment, individual counseling, and domestic violence counseling, nor did she submit to any of the monthly drug tests. Despite reporting her extensive mental-health history, Mother felt that she did not need the individual counseling.

Mother attended ten of the thirty-sixty scheduled visits with the children. During the pendency of the case, Mother entered drug rehabilitation three times, but

[6]At removal, the children were approximately two years old (M.H.), one year old (S.H.), and one month old (B.H.).

[7]The Department contacted three family members to explore whether they could care for the children, but each family member was unable, either due to foster care licensing restrictions or criminal history.

she always left after a few days. The first rehabilitation was intended to be a seven-day detox, but Mother left against medical advice after only three days due to Father's demands. Mother left the second rehabilitation after 24 to 48 hours and again went back to Father. The third rehabilitation began on October 2, 2024, and ended on October 12, 2024, when Mother was reported to have left with Father.

The Department also had concerns of domestic violence between Father and Mother. Department caseworkers noted that Mother would accuse Father of domestic violence around scheduled court hearings or before entering rehabilitation. Father was arrested for assaulting Mother in July 2024, and although the Department offered resources to her, Mother still returned to Father.

Despite all of this, caseworkers reported that Mother was bonded to the children and appeared to love and care for them. As time went on, caseworkers spoke with Mother about the upcoming termination trial and encouraged her to engage in services, and Mother claimed that she would go to rehabilitation and engage in services.

Regarding Father's compliance with the service plan, he refused the monthly drug tests and admitted to using methamphetamine because he liked the way he felt when he was on drugs and had no plan to stop. Father did not engage in any services, and he attended six of the thirty-six scheduled visits with the children. Father's excuse for not attending the visits was that he needed to work.

Father and Mother both claimed to be employed, but they provided no proof of stable employment to the Department. Additionally, neither of them had stable housing, and they sometimes lived together in Mother's car.

The Department ultimately determined that it was in the children's best interest to terminate Father and Mother's parental rights. Mother had not displayed any sobriety; had not exhibited any improvement through engagement with services; had not shown that she was capable of providing a safe and stable home for the children; had not addressed her abusive relationship with Father, which indicated to the Department that she was not a stable and safe parent; and had not shown that she could prioritize the children's needs above her own.

The Department reported that it found placement for the children together in an adoption-motivated and safe environment, that its plan was for the current placement to adopt the children together, and that the children were thriving, progressing, and comfortable with their foster parents.

The final trial on the merits of the original petition for protection of a child, for conservatorship, and for termination in the suit affecting parent-child relationship (termination trial) was set for October 15, 2024. On October 2, 2024, Mother checked herself into a rehabilitation facility and had a projected treatment completion date of December 2, 2024. On October 10, 2024, Mother's attorney filed a motion for continuance that explained Mother had voluntarily admitted herself into a treatment facility and requested that the trial be continued so that Mother could

6

substantially complete her treatment and demonstrate sobriety. But, by October 12, 2024, Mother had checked herself out of the facility, and she was believed to be with Father.

Three days later, Mother did not appear for the termination trial. Mother's attorney explained that Mother was aware of the trial date and was encouraged to come to court. Mother's attorney urged the trial court to grant the continuance because Mother wanted to check herself back into the rehabilitation facility, continue the treatment, and complete her service plan. Father's attorney was unopposed to Mother's motion for continuance, but the Department and the children's attorney ad litem objected to the continuance. The trial court denied Mother's continuance, and the termination trial commenced. After hearing testimony from the Department,[8] the trial court terminated both Father and Mother's parental rights to the children.[9] Father and Mother brought this appeal.

## III.  DISCUSSION

### A.  FATHER'S APPEAL

Father's attorney filed an *Anders* brief stating that there are no arguable grounds for appeal and also filed a motion to withdraw as Father's attorney of record. *See*

---

[8]Neither Father's attorney nor Mother's attorney called any witnesses.

[9]The trial court found that termination of the parent-child relationship between Mother and the children was warranted under Texas Family Code Sections 161.001(b)(1)(D), (E), (N), (O), (P), and (R) and that termination was in the children's best interest.

*Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.) (holding that *Anders* procedures apply in cases terminating parental rights).

The brief meets the *Anders* requirements by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. Further, Father's attorney (1) provided Father with a copy of the *Anders* brief, (2) informed Father of his right to file a pro se response, and (3) advised Father of his right to access the appellate record from our court and provided him with instructions and a draft motion for obtaining the record. *See Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014). We also notified Father of his right to file a response, but he did not do so. The Department declined to respond to the *Anders* brief.

When an *Anders* brief is filed, we must independently examine the record to determine if any arguable grounds for appeal exist. *In re C.J.*, 501 S.W.3d 254, 255 (Tex. App.—Fort Worth 2016, pets. denied). Our examination should consider the record, briefs, and any pro se response. *In re L.B.*, No. 02-19-00407-CV, 2020 WL 1809505, at *1 (Tex. App.—Fort Worth Apr. 9, 2020, no pet.) (mem. op.). After careful review, we agree with Father's attorney and hold that there are no arguable grounds for appeal in Father's case.

8

## B. MOTHER'S APPEAL

### 1. Denial of a Continuance

In her first issue, Mother argues that the trial court abused its discretion by denying her motion for continuance. We disagree.

### a. Standard of Review and Applicable Law

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, no pet.); *In re E.L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). An abuse of discretion occurs when the trial court acts unreasonably, arbitrarily, and without reference to any guiding rules or principles. *D.W.*, 249 S.W.3d at 647; *E.L.T*, 93 S.W.3d at 375. An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *D.W.*, 249 S.W.3d at 647.

Under Texas Rule of Civil Procedure 251, no continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. When a movant fails to comply with these requirements, it is presumed that the trial court did not abuse its discretion in denying the motion. *E.L.T.*, 93 S.W.3d at 375. A trial court is not required to grant a motion for continuance if a party is unable to be present at trial. *See* Tex. R. Civ. P. 251; *Holmes v. GMAC, Inc.*, 458 S.W.3d 85, 92 (Tex. App.—El Paso 2014, no pet.).

9

Section 263.401(a) establishes an automatic dismissal date for suits affecting the parent-child relationship. Tex. Fam. Code Ann. § 263.401(a). Unless the trial court has commenced trial on the merits or granted an extension under Subsection (b) or (b-1), the suit is automatically dismissed on the first Monday after the first anniversary that the trial court rendered a temporary order appointing the Department as Temporary Managing Conservator (TMC), and the trial court's jurisdiction of the suit is terminated. *Id.*

A trial court may retain the suit if the trial court finds that (1) extraordinary circumstances necessitate the child remaining in the Department's care and (2) continuing the appointment of the Department as TMC is in the child's best interest. *Id.* § 263.401(b); *M.G.P. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-13-00004-CV, 2013 WL 2157753, at *2 (Tex. App.—Austin May 16, 2013, pet. denied) (mem. op.). Circumstances that do not warrant an extension have included incarceration, entering rehabilitation, and a parent beginning compliance with the service plan too late to complete the requirements before trial. *See In re M.S.*, 602 S.W.3d 676, 679 (Tex. App.—Texarkana 2020, no pet.); *In re J.S.S.*, 594 S.W.3d 493, 501 (Tex. App.—Waco 2019, pet. denied); *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

### b. Analysis

The trial court rendered its temporary order appointing the Department as TMC over the children on December 1, 2023, making the automatic dismissal date

December 2, 2024. *See* Tex. Fam. Code Ann. § 263.401(a). The termination trial was set for October 15, 2024.

On October 2, 2024, Mother admitted herself to a rehabilitation facility for treatment, and on October 10, 2024, Mother's attorney moved for a continuance on that basis. However, by October 12, 2024, Mother had again left the rehabilitation facility.

On October 15, 2024, Mother did not appear for trial. Mother's attorney pressed the need for a continuance and explained that Mother intended to re-admit herself to the rehabilitation facility for continued treatment and to work on her service plan. Mother's attorney also explained that there was a concern that Mother could not come to court because Father was holding her against her will. However, this concern was resolved when Mother's attorney spoke with Mother, who indicated that she would come to the courtroom.[10]

---

[10]Mother's brief discusses the exigency of the continuance and impossibility to "secure a notary and e-file the motion to protect" her rights. However, we note that at the time Mother's attorney moved for the continuance on the day of trial, Mother was not in a rehabilitation facility. Thus, it was Mother's own failure to appear at trial that inhibited her attorney from showing "a sufficient cause supported by affidavit." While the continuance may still not have been granted, we are unpersuaded by her argument that obtaining an affidavit was an impossible feat. After Mother's attorney raised the issue of Mother being "a prisoner of the father," her attorney spoke with her and encouraged her to appear at trial. As is evident in their communication, obtaining an affidavit from Mother to support the motion, though potentially burdensome, was not impossible.

11

The Department objected to the continuance and responded that the evidence would show that it was Mother's third time entering and leaving rehabilitation with Father throughout the case, the Department's concerns of drug use and domestic violence had not been addressed, and Mother had not made any substantial progress on her service plan. Father's attorney did not oppose the motion for continuance, but the children's ad litem joined in the Department's objection. The trial court ultimately denied Mother's motion for continuance; the trial commenced, and her parental rights to the children were terminated.

Here, Mother's motion for continuance does not comport with Texas Rule of Civil Procedure 251—it fails to show sufficient cause supported by an affidavit, by consent of the parties, or by operation of law. *See* Tex. R. Civ. P. 251. Due to Mother's noncompliance with Texas Rule of Civil Procedure 251, it is presumed that the trial court did not abuse its discretion in denying her motion. *E.L.T.*, 93 S.W.3d at 375.

Moreover, some substantive and probative evidence exists to support the trial court's decision. *D.W.*, 249 S.W.3d at 647. First, the automatic dismissal date was December 2, 2024, and Mother seemingly waited until approximately fourteen days before the trial date to admit herself to the rehabilitation facility. The projected completion date for her inpatient treatment was the same date as the automatic dismissal: December 2, 2024. Mother had already twice entered—and left without completing treatment—a rehabilitation facility during the pendency of the case. The

12

trial court could have viewed Mother's most recent admission as a tactic to delay the proceedings.

Second, and arguably more consequential, Mother was not in the rehabilitation facility when the trial court denied her continuance. Mother argues that the continuance was necessary because the trial would have interrupted her treatment. Yet, Mother had checked herself out of the rehabilitation facility just two days after filing the motion for continuance. Thus, Mother's decision to leave the treatment facility effectively negated the basis for her continuance. It was Mother's choice to leave the facility, not the commencement of trial, that interrupted her "latest and longest attempt" at treatment. On the day of trial, Mother's attorney merely expressed that Mother desired to return to the facility—not that she was actually in the facility receiving treatment. Therefore, the grounds for Mother's continuance were based on hypothetical, and not actual, circumstances.

Third, with the knowledge that Mother was inconsistent and noncommittal in her treatment, the trial court could have determined that continuing the case to allow Mother a fourth attempt at rehabilitation was not reasonable, especially with the impending automatic dismissal date. Mother's failure to begin complying with a family service plan until shortly before trial did not constitute an extraordinary circumstance when the requirements and expectations were known well to her in advance of trial. *See Shaw v. Tex. Dep't of Family & Protective Servs.*, No. 03–05–00682–CV, 2006 WL 2504460, at *8 (Tex. App.—Austin Aug. 31, 2006, pet. denied) (mem.

13

op.). Actions that are "considered to be the parent's fault" will generally not constitute an extraordinary circumstance. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re G.P.*, No. 10-13-00062-CV, 2013 WL 2639243, at *1 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op.)).

Fourth, Mother did not explain how remaining in the Department's care, while she attempted her fourth stent in rehabilitation, would be in the children's best interest. Rather, Mother broadly claimed that the children would not suffer harm or "threat of loss of temporary placement of the children" by granting the continuance.

Based on these forgoing reasons, we conclude that the trial court did not act unreasonably, arbitrarily, and without reference to any guiding rules or principles when it denied Mother's motion for continuance. *E.L.T.*, 93 S.W.3d at 375. Accordingly, we hold that the trial court did not abuse its discretion in denying Mother's motion for continuance, and we overrule her first issue.

## 2. Best-Interest Sufficiency

In her second issue, Mother does not challenge the predicate-conduct grounds found by the trial court; but instead, she complains that the evidence was legally and factually insufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D)–(E), (O)–(P), (R), (2). We disagree.

### a. Standard of Review and Applicable Law

In parental termination cases, the Department must prove two elements by clear and convincing evidence: (1) the parent's actions satisfy a statutory ground under

14

Section 161.001(b)(1); and (2) termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007. Due process demands a heightened standard of clear and convincing evidence, and thus, appellate courts will strictly construe involuntary termination statutes in favor of the parents. *Z.N.*, 602 S.W.3d at 545.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Id.* The factfinder may draw inferences, but those inferences must be reasonable and logical. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In determining factual sufficiency of the evidence supporting termination of the parent–child relationship, we must perform "an exacting review of the entire

record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the alleged termination ground and that termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19. If the evidence is factually sufficient, then it is necessarily legally sufficient as well. *In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.).

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence considering nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;
- the child's emotional and physical needs now and in the future;

16

• the emotional and physical danger to the child now and in the future;

• the parental abilities of the individuals seeking custody;

• the programs available to assist these individuals to promote the child's best interest;

• the plans for the child by these individuals or by the agency seeking custody;

• the stability of the home or proposed placement;

• the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

• the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.*

### b. Analysis

In our best-interest sufficiency analysis, we will recount the evidence relevant to each of the *Holley* factors, but we will combine them topically for ease of discussion.

**(1.) The emotional and physical danger to the children now and in the future; Mother's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and any excuse for the acts or omissions**

17

- Mother used marijuana, methamphetamine, and cocaine during pregnancy.

- At birth, B.H. was positive for methamphetamine, amphetamine, and cannabinoids. Approximately one month later, when the children were removed from Mother's care, all three of them were positive for methamphetamine and cocaine.

- During the initial visit with the Department's investigators, Mother left the children unattended in a vehicle.

- Of the thirty-sixty scheduled visits with the children, Mother attended ten.

**(2.) The Department's plans and their stability; the children's desires and emotional and physical needs now and in the future**

- The children were thriving and progressing well at their placement, they were comfortable and bonded to their foster parents, and the children were bonded to each other and played well together.

- All three children were meeting milestones and improving with the Department's adoption-motivated placement.

- Of the three children, only M.H. needed additional help, specifically speech therapy, which the foster parents regularly helped her to complete.

- There was no evidence of the children's desires—they were all under four years old at the time of trial.

**(3.) The stability of the home; Mother's parental abilities; any programs available to assist Mother in promoting the children's best interest; and Mother's plans**

- Mother appeared to love her children and care for them, and caseworkers had no concern with her behavior at the supervised visitations.

- Mother completed a psychological assessment pursuant to the service plan.

- Mother had a long history of bipolar disorder, methamphetamine use disorder, and depression; however, she chose to not receive treatment, counseling, or services for these concerns.

- Mother did not complete random drug testing, parenting classes, individual counseling, domestic violence counseling, or relationship counseling. The Department requested that Mother take seven drug tests over the course of seven months, but she never submitted to any testing.

- The Department worked to get Mother into various programs for domestic violence victims, but she chose to go back to Father and not return phone calls from the Department. The Department also offered Mother cab vouchers for various appointments, but she never used the vouchers.

- Mother did not have proof of stable employment.

- Mother prematurely checked herself out of a rehabilitation facility three times within twelve months.

- Mother repeatedly violated the safety plan by having unsupervised contact with the children.

- Mother did not have stable housing, and she would sometimes sleep in her car.

Considering the evidence pertinent to each of the *Holley* factors, we conclude that the evidence is legally and factually sufficient to support the trial court's best-interest finding.

19

The evidence showed that Mother (1) caused her children to be born with various controlled substances in their systems; (2) caused all three children to enter the Department's care with controlled substances in their systems; (3) had a history of drug use; (4) lacked stable housing and employment; (5) decided to be with Father, an admittedly chronic methamphetamine user with whom there was a history of domestic violence; (6) chose to quit three separate rehabilitation programs; (7) missed numerous visits with the children; and (8) did not utilize the Department's programs and resources.

In light of Mother's acts and omissions, including her substance abuse history and lack of a concrete plan to provide a safe and stable environment for the future, and the children's circumstances at the time of trial—in their adoption-motivated placement—we conclude that the trial court could have reasonably formed a firm conviction or belief that terminating Mother's parent–child relationship with the children was in their best interest. *See, e.g.*, *In re T.E.*, No. 02-24-00271-CV, 2024 WL 4631296, at *6 (Tex. App.—Fort Worth Oct. 31, 2024, no pet.) (mem. op.); *In re G.W.*, No. 02-22-00181-CV, 2022 WL 4545568, at *2 (Tex. App.—Fort Worth Sept. 29, 2022, pet. denied) (mem. op.). Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's best-interest finding, and we overrule Mother's second issue.

## IV. CONCLUSION

Having held that there are no arguable grounds for Father's appeal and having overruled both of Mother's issues, we affirm the trial court's judgment. However, we deny the motion to withdraw filed by Father's attorney because it does not show good cause for withdrawal independent from counsel's conclusion that the appeal is frivolous. *See* Tex. R. Civ. P. 10; *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016); *C.J.*, 501 S.W.3d at 255. Thus, Father's attorney remains appointed in his case through any proceedings in the supreme court unless otherwise relieved of these duties. *See P.M.*, 520 S.W.3d at 27–28.

/s/ Brian Walker

Brian Walker
Justice

Delivered: March 27, 2025